

# FILED

NOV 0 7 2016

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

### IN THE UNITED DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. | **RICK LANGKAMP, an individual,** | ) |
| | | ) |
| 2. | **DARLA LANGKAMP, an individual,** | ) |
| | | ) |
| | **Plaintiffs,** | ) |
| | | ) |
| v. | | ) |
| | | ) |
| 1. | **MAYES EMERGENCY SERVICES** | ) |
| | **TRUST AUTHORITY,** | ) |
| | | ) |
| 2. | **JOHN DOES 1-15, Board Members and** | ) |
| | **Employees, Agents, and Representatives** | ) |
| | **of the Mayes Emergency Services Trust** | ) |
| | **Authority,** | ) |
| | | ) |
| | **Defendants.** | ) |

**16 CV - 676 CVE   FHM**

CASE NO.: _____

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

### COMPLAINT

**COMES NOW** the Plaintiffs Rick Langkamp and Darla Langkamp (both as "Plaintiffs"), and submits their Complaint asserting their causes of action against the Defendants.

### PARTIES, JURISDICTION, AND VENUE

1.      Rick Langkamp ("Mr. Langkamp"), the husband of Ms. Langkamp, is a resident of the City of Pryor, Mayes County, State of Oklahoma.

2.      Darla Langkamp ("Ms. Langkamp"), the wife of Mr. Langkamp, is a resident of the City of Pryor, Mayes County, State of Oklahoma.

3      The Defendant Mayes Emergency Service Trust Authority ("MESTA") is a political subdivision (public trust) organized under the laws of the State of Oklahoma. The Plaintiffs represents to this Court that Ms. Langkamp complied with the Notice provisions of

1



the GTCA, in that she provided MESTA timely notice of her claims and such was denied. [*See*,

*e.g.*, **Exhibit 1**].

4.      Upon information and belief, at all times relevant the Defendant John Does 1-

15 ("John Does") are either current or former MESTA Board members and are residents of

Oklahoma, or current or former MESTA employees, agents or representatives.

5.      The Plaintiffs each filed a charge of discrimination against MESTA with the

Equal Employment Opportunity Commission complaining of discrimination based on

disability. A Dismissal and Notice of Suit Rights dated September 19, 2016 from the EEOC

was received by Mr. Langkamp and Ms. Langkamp, and this civil action was commenced

within ninety (90) days of such receipt. [*See*, **Exhibit 2 & Exhibit 3**]. All conditions precedent

to commencing this action has been satisfied.

6.      The jurisdictional basis for this Court to determine this cause of action is

pursuant to 28 U.S.C. § 1331 as this cause of action arises under federal law: 42 U.S.C. § 1983;

and 28 U.S.C. §1343(a)(4), as this action arises under 42 U.S.C. 2000e. Further relief is sought

pursuant to 28 U.S.C §§2201-2202. The Court likewise has supplemental jurisdiction over the

Plaintiffs' anticipated tort claims pursuant to 28 U.S.C. § 1367.[1]

7.      Venue is properly laid in the Northern District of Oklahoma pursuant to 28

U.S.C. § 1391(b) as the incidents giving rise to this action occurred in Mayes County, State of

Oklahoma.

---

[1] Mr. Langkamp anticipates amending his pleading and asserting at least a supplemental tort claim against MESTA, the subject of which is part of a pending Oklahoma Governmental Tort Claim Act notice.

**General Facts**

8.      Mr. Langkamp is the former executive director of MESTA, and had acted in that capacity beginning in 2003 through his date of termination on June 14, 2016. During Mr. Langkamp's employment tenure, MESTA achieved enormous financial and customer service success, and he deservedly received praise and credit for MESTA's success under his leadership.

9.      Throughout his approximately 13-year term as MESTA's executive director Mr. Langkamp was never a disciplinary problem or otherwise subject to any progressive discipline.

10.      Ms. Langkamp has been employed by MESTA as a secretary since March, 2005. During her tenure of employment, not only had she never been subject to any disciplinary actions she had received numerous accolades and compliments for her work.

11.      MESTA is the ambulance service provided for Mayes County. The MESTA Board of Trustees ("MESTA Board") is mandated by its Trust Indenture to be populated by eleven (11) members. At present MESTA is being intentionally underpopulated by the Mayes County Board of County Commissioners in order to abuse, discriminate, and attack the Plaintiffs.

12.      The MESTA Board conducts monthly, public meetings at its main office in Pryor, Oklahoma. These meetings are governed by Oklahoma's Open Meeting Act, 25 O.S. §301, *et. seq.*

13.      During the regularly scheduled <u>March 8, 2016</u> MESTA Board meeting, Trent Peper ("Peper") who was a former MESTA Board Chairman was reelected to that position.

14.      During his previous tenure as MESTA Board Chairman, Peper had frequently harassed Ms. Langkamp and other female MESTA employees. This included referring to Ms.

3

Langkamp in a demeaning manner (i.e. calling her "sweetie" and honey") and other doting nicknames one might call their spouse. Peper also inappropriately touched Ms. Langkamp's shoulders.

15.     Ms. Langkamp complained about Peper's behavior to the executive director, who in turn spoke with two Board members and the former MESTA counsel, Fred Sordahl.

16.     Mr. Sordahl reportedly spoke with Peper about his inappropriate behavior towards Ms. Langkamp with the idea that this behavior would cease. Peper's behavior did not stop.

17.     MESTA replaced Mr. Sordahl with privately-retained counsel Jim Orbison. Early on in Mr. Orbison's tenure as MESTA legal counsel, Ms. Langkamp told Mr. Orbison that she and other female MESTA employees had issues with Peper and the way he speaks to female employees working at MESTA.

18.     Mr. Orbison acknowledged her concern, and told her "OK". Ms. Langkamp took his response to mean he would at least inquire into the concern. To Ms. Langkamp's knowledge, Mr. Orbison did not address this matter with Peper, and never followed up with her.

19.     During the public comment portion of the aforementioned March 8, 2016 MESTA Board meeting, Ms. Langkamp addressed the MESTA Board directly about Peper's previous harassment. She told the MESTA Board to the effect that, "I will not be putting up with that type of pet name calling that went on the last time this person was in this position." Ms. Langkamp further told MESTA's Board she had spoken with two attorneys about Peper's conduct and that nothing has happened. She concluded her comments by telling all persons

4

present at that MESTA Board meeting to the effect: "You are my witnesses and I will not be putting up with it again."

20.     Immediately after this meeting, Mr. Orbison met in the public hallway at MESTA in which a very loud conversation took place between himself, and MESTA Board Members Sherman Weaver ("Weaver"), Dr. Jason Joice ("Joice"), and Peper.

21.     During this meeting, Weaver was overheard loudly stating: "If she [Darla Langkamp] thinks I'm mean now, wait until I get on the other side of the board." He then went on to insult Ms. Langkamp by stating that: "What is she going to do? Hand out more Bibles?"

22.     No dissenting or objecting opinions was shared between the other meeting participants—including Mr. Orbison. The foregoing threats were overheard by a MESTA supervisor, Tate Caudle, who out of concern for Ms. Langkamp's safety and well-being prepared a "transcript" of this meeting.

23.     Because of the complete lack of concern with Peper's workplace sexual harassment of Ms. Langkamp, she is in fear from Weaver's obvious threat of retaliation and losing her continued employment with MESTA.

24.     Ms. Langkamp has suffers and continues to endure emotional distress, fear of the future, humiliation, and embarrassment. Compounding this distress is that since Mr. Langkamp's employment by MESTA was terminated and he remains unemployed, the family has been left with one income provider.

25.     After Ms. Langkamp first made her intention in March 2016 to pursue relief with the United States Equal Opportunity Commission resulting from the hallway meeting discussed in Paragraphs 20-22, Mr. Langkamp and current MESTA employee/supervisor Tate

Caudle have systematically and repeatedly been retaliated against by MESTA's Board (in particular by Peper, Weaver, and Joice).

26.     Mr. Langkamp and Tate Caudle were both witnesses to the discriminatory acts Ms. Langkamp complained of in her Charge of Discrimination filed with EEOC.

27.     Because of his witnessing, investigating, and otherwise participating in Ms. Langkamp's charge of discrimination, Mr. Langkamp has been generally retaliated against in at least the following ways: being stripped of his enumerated job duties; restrictions placed on his authority as Executive Director (one restriction made in direct violation of Oklahoma's Open Meetings Act, 51 O.S. §301 *et. seq*.); unprecedented negative employment evaluation given to him by MESTA Board members who Ms. Langkamp alleged discriminated against her; contrived allegations of mismanagement and financial improprieties; interference by MESTA's legal counsel with his authority to manage MESTA; general hostility and harassment by MESTA and MESTA's legal counsel directed towards him by persons who are the subject of Ms. Langkamp's Charge ; and accusations by Joice at a committee meeting that Mr. Langkamp was engaged in criminal activity.

28.     Specifically, during a MESTA committee meeting on April 19, 2016, Joice inferred in the presence of several persons that the Plaintiff was engaging in criminal activity. Joice even read legal authority to those attending to support his opinion.

29.     Specifically, during a MESTA Board meeting held on May 10, 2016, Joice moved to amend MESTA's policy and procedures manual to remove enumerated job duties belonging to Mr. Langkamp as MESTA's executive director, to-wit: the responsibility to investigate allegations of workplace discrimination. This motion which passed was not an item

on the published agenda for this meeting, and was not objected to by MESTA's two attorneys who were present at this meeting.

30.     Throughout his approximately 13-year term as MESTA's executive director, Mr. Langkamp had never received a written evaluation from any MESTA Board.

31.     Specifically, during the May 2016 MESTA Board meeting, Mr. Langkamp was presented an employee evaluation in which only 8 of 11 required MESTA Board members participated in completing. Prior to that meeting, Mr. Langkamp had never seen the form used by the MESTA Board to evaluate him.

32.     Mr. Langkamp was ordered by Peper, the MESTA Board chairman, to submit a written response to the evaluation discussed in the preceding paragraph. Mr. Langkamp was not informed by the MESTA Board that his employment was in jeopardy.

33.     Mr. Langkamp timely submitted his response to his evaluation to the MESTA Board on May 24, 2016.

34.     During the June 14, 2016 MESTA Board Meeting, Mr. Langkamp was unceremoniously and abruptly terminated as MESTA's executive director. MESTA's Board deviated from its normal schedule in order to expedite this employment action before Mr. Langkamp's counsel had arrived at the meeting[2].

35.     Prior to June 14, 2016 MESTA Board meeting, MESTA's counsel approached Mr. Langkamp in his office and insisted he sign a document acknowledging he was required by certain MESTA Board members to complete a written response to the aforementioned

---

[2] Mr. Langkamp's termination is the subject of a pending EEOC investigation, Charge No.: 564-2016-01328. At present, he is not seeking relief for this termination; however, it is anticipated that such may become a cause of action subsequent to the EEOC investigation.

evaluation he had received from the previous MESTA Board meeting. This too was done without Mr. Langkamp's counsel being present.

36.     The day after his employment was terminated, MESTA's counsel sought to alter Mr. Langkamp's personnel file by removing the document discussed in the preceding paragraph and replace it with a different version of the same that Mr. Langkamp's counsel could review. Mr. Langkamp refused to tamper with his personnel file.

37.     Mr. Langkamp has had three significant surgeries because of injuries he suffered on the job with MESTA within the previous eighteen months.

38.     Mr. Langkamp was medically released from his second neck surgery and other medical ailments to return to work in March, 2016—three months before his employment was terminated.

39.     Peper, Weaver, Joice, and the John Does are aware of the Mr. Langkamp's medical conditions, and the enormous pain and suffering he continues to endure. Despite this knowledge, these persons have continued to harass, abuse, and attack Mr. Langkamp.

40.     The Plaintiffs have placed their home for sale and seeking to relocate from Mayes County as a result of the public humiliation and embarrassment they have suffered at the hands of the Defendants.

41.     The Plaintiffs spoke publicly about certain MESTA Board members' malfeasance, misuse of public monies, abuse of power, and generally raising matters of public concern consistent with his constitutional rights.

42.     The Plaintiffs both exercised his constitutional rights of free speech which involved a matter of public concern and his right to petition for redress of grievances in filing the instant action, as well as when they filed his original petition and their EEOC charges of

discrimination, and otherwise sought redress for the abuses inflicted onto them by the Defendants.

## FIRST CAUSE OF ACTION
## MS. LANGKAMP V. MESTA
## 42 U.S.C. § 1983 (FREE SPEECH VIOLATION/RETALIATION)

For the First Cause of Action against MESTA, the Plaintiff Darla Langkamp adopts and re-alleges all the allegations above as if fully set forth herein and further alleges and states as follows:

43.     The First Amendment provides in part that "Congress shall make no law...abridging the freedom of speech..." and the right of people to petition the government for redress of grievances. This freedom of speech has long been made applicable to the states through the Fourteenth Amendment to the Constitution of the United States and is a right of personal liberty secured by this amendment's due process clause. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and manner.

44.     Ms. Langkamp exercised her First Amendment rights of free speech which involved a matter of public concern when she publicly raised issues of workplace sexual harassment by Peper at the March 2016 MESTA Board meeting. Ms. Langkamp exercising of her First Amendment rights was both a substantial and motivating factor by the Defendants decision to retaliate against her.

45.     Ms. Langkamp's interest in exercising her rights was far greater than any interest held by the Defendants. The Defendants' restrictions on Ms. Langkamp's free speech was both content and viewpoint based, and in violation of the First Amendment.

46.     The Defendants actions have unconstitutionally deprived Ms. Langkamp of, and were intended to deprive, limit, restrict, or punish her for engaging in his right to, public

speech in a traditional public forum. Such was in violation of Ms. Langkamp's due process right to be free from arbitrary or conscience-shocking conduct by the Defendants, and equal protection of the law pursuant to the First and Fourteenth Amendment to the United States Constitution. By their acts and omissions, policies and practices, or customs which thereby prevented Ms. Langkamp from exercising her constitutional rights, Ms. Langkamp is entitled to damages from the Defendants pursuant to 42 U.S.C. §1983.

47.     Further, the actions of the Defendants by its failure to adopt proper and constitutional policies and customs created an environment wherein its employees could freely and without fear of discipline violate the First and Fourteenth Amendment rights of the citizens such as Ms. Langkamp. The violations of the policies by the Defendants are so prevalent they amount to a custom or practice that has been ratified by the condoning of the same.

48.     Ms. Langkamp suffered grievous emotional distress, and suffered irreparable harm to include the loss of her constitutional rights entitling her to relief both at law and in equity.

49.     The complained of conduct by MESTA was intentional. Further, the Defendants acted with such malice, willfulness, and reckless indifference to Ms. Langkamp's rights in violation of federal law she is entitled to an award of punitive damages.

**WHEREFORE**, premises considered, the Plaintiff Darla Langkamp prays the Court for a declaration that the conduct engaged in by MESTA was in violation of her rights; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in excess of $100,000; costs and expenses, including reasonable attorneys' fees provided for by applicable law; an assessment of damage damages to compensate for any tax

10

consequences of this judgment and for any such other legal for him to leave this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**MS. LANGKAMP V. MESTA**
**RETALIATION IN VIOLATION OF TITLE VII**

For the Second Cause of Action against MESTA, the Plaintiff Darla Langkamp adopts and re-alleges all the allegations above as if fully set forth herein and further alleges and states as follows:

50.   As a direct and proximate result of Ms. Langkamp's protected act and/or perceived protective act of publicly reporting Peper's discriminatory behavior, she was subjected to unlawful retaliation that is prohibited by Title VII of the Civil Rights act of 1964, 42 U.S.C. §2000e *et. seq.*

51.   Based upon but not limited to the events described above, Ms. Langkamp's terms and conditions of employment were adversely affected due to the ongoing retaliation directed towards her.

52.   A reasonable employee would find MESTA's response to Ms. Langkamp's engaging in protective activity as materially adverse, and further that a reasonable employee would be dissuaded from making or supporting a charge of discrimination.

53.   A causal connection exists between Ms. Langkamp's participating in a protected activity and the materially adverse actions taken against her including without limitation restriction of job duties and refusal to provide raises as they came due.

54.   As a direct and proximate result of MESTA's actions, Ms. Langkamp has suffered, is now suffering, and will continue to suffer emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

55.     The complained of discriminatory employment practices by MESTA was intentional. Further, MESTA acted with such malice, willfulness, and reckless indifference to Ms. Langkamp's rights in violation of federal law she is entitled to an award of punitive damages.

**WHEREFORE**, premises considered, the Plaintiff Darla Langkamp prays the Court for a declaration that the conduct engaged in by MESTA was in violation of her rights; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in excess of $100,000; costs and expenses, including reasonable attorneys' fees provided for by applicable law; an assessment of damage damages to compensate for any tax consequences of this judgment and for any such other legal for him to leave this Court deems just and proper.

### THIRD CAUSE OF ACTION
### MR. LANGKAMP V. MESTA
### RETALIATION IN VIOLATION OF TITLE VII

For the Third Cause of Action against MESTA, the Plaintiff Rick Langkamp adopts and re-alleges all the allegations above as if fully set forth herein and further alleges and states as follows:

56.     As a direct and proximate result of Mr. Langkamp's protected act and/or perceived protective act of assisting another employee, Ms. Langkamp, who had reported the acts of discrimination inflicted onto her by Peper, Mr. Langkamp was subjected to retaliation by MESTA that is prohibited by Title VII of the Civil Rights act of 1964, 42 U.S.C. §2000e *et. seq.*

12

57.     Based upon but not limited to the events described above, Mr. Langkamp's terms and conditions of employment were adversely affected due to the ongoing retaliation directed towards him.

58.     A reasonable employee would find MESTA's response to Mr. Langkamp's engaging in protective activity as materially adverse, and further that a reasonable employee would be dissuaded from making or supporting a charge of discrimination.

59.     A causal connection exists between Mr. Langkamp's participating in a protected activity and the materially adverse actions taken against him including without limitation the restriction and removal of job duties and termination of his employment.

60.     As a direct and proximate result of MESTA's actions, Mr. Langkamp has suffered, is now suffering, and will continue to suffer lost wages and fringe benefits, emotional pain, anxiety, inconvenience, mental anguish, loss of enjoyment of life, humiliation, and other pecuniary losses.

62.     The complained of discriminatory employment practices by MESTA were intentional. Further, MESTA acted with such malice, willfulness, and reckless indifference to Mr. Langkamp's rights in violation of federal law he is entitled to an award of punitive damages.

**WHEREFORE**, premises considered, the Plaintiff Rick Langkamp prays the Court for declaration that the conduct engaged in by MESTA was in violation of his rights; compensatory and punitive damages, including emotional distress, mental anguish, and humiliation, in excess of $100,000; costs and expenses, including reasonable attorneys' fees provided for by applicable law; an assessment of damages to compensate for any tax

consequences of this judgment and for any such other legal for him to leave this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**MS. LANGKAMP V. MESTA**

For the Fourth Cause of Action against MESTA, Ms. Langkamp adopts and re-alleges all her allegations above as if fully set forth herein; and further alleges and states:

63.     MESTA owed a legal duty to Ms. Langkamp to sufficiently and properly hire, train, supervise, monitor, and retain its employees in such a manner to not threaten, demean, intimidate, create fear, or otherwise impose terror on employees such as Ms. Langkamp.

64.     MESTA breached these duties, and others to be discovered upon the completion of discovery, by negligently failing to sufficiently and properly hire, train, supervise, monitor, and retain its employees. Further, such failures resulted in MESTA being unable to provide Ms. Langkamp a reasonably safe workplace.

65.     Independently or alternatively, MESTA breached duties it owed Ms. Langkamp by negligently failing to follow proper policies and procedures, or by failing to adopt/enact the same, to protect employees such as Ms. Langkamp from harm inflicted by her coworkers.

66.     As a direct and proximate cause of MESTA's breaches of its legal duties it owed her, Ms. Langkamp sustained significant personal injuries including fear of the future, emotional distress, and degradation/humiliation.

**WHEREFORE**, premises considered, the Plaintiff Darla Langkamp prays the Court for Judgment against MESTA, and award her actual damages in excess $100,000; costs and expenses, prejudgment and post judgment interest, attorney fees incurred, and any other relief deemed just and equitable.

14

Respectfully submitted,
E. ANTHONY MARESHIE, P.L.L.C.

By:___/s/ Tony Mareshie
TONY MARESHIE, OBA#18180
P.O. Box 330161
Tulsa, Oklahoma 74133-0161
Telephone:     (918) 519-3771
Facsimile:     (918) 970-6927
*Counsel for Plaintiff*

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**



# RIGGS ⟨RA⟩ ABNEY
### NEAL   TURPEN   ORBISON   LEWIS

KRISTOPHER E. KOEPSEL, ESQ.
TELEPHONE: (918) 587-3161
FACSIMILE: (918) 587-9708
E-MAIL: KKoepsel@riggsabney.com

May 11, 2016

**CERTIFIED MAIL and *Via FAX (918) 970-6927***

Anthony Mareshie, Esq.
P.O. Box 330161
Tulsa, OK 74133

RE:     Governmental Tort Claim Notice from Darla Langkamp to the Mayes Emergency
Services Trust Authority dated April 18, 2016

Mr. Mareshie:

Our firm represents the Mayes Emergency Services Trust Authority ("MESTA"). MESTA
is in receipt of the claim submitted by you on behalf of the claimant, Darla Langkamp. The Board
of Trustees for MESTA having evaluated the claim and pursuant to Okla. Stat. tit. 51 § 157 hereby
denies Darla Langkamp's claim in its entirety.

Regards,

Kristopher E. Koepsel
For the Firm

**EXHIBIT**

**1**

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: Ricky T. Langkamp<br>P.O. Box 809<br>Pryor, OK 74362 | From: Oklahoma City Area Office<br>215 Dean A. McGee Avenue<br>Suite 524<br>Oklahoma City, OK 73102 |
|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 564-2016-01135 | Tandi J. Dillard,<br>Investigator | (405) 231-4317 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

| On behalf of the Commission | |
|---|---|
|  | 9/19/2016 |
| Holly Waldron Cole,<br>Area Office Director | (Date Mailed) |

Enclosures(s)

cc:
| Kristopher E. Koepsel, Attorney<br>Riggs Abney Neal Turpen Orbison Lewis<br>502 West Sixth Street<br>Tulsa, OK 74119 | Tony Mareshie, Attorney<br>E. ANTHONY MARESHIE, P.L.L.C.<br>P.O. Box 330161<br>Tulsa, OK 74133 |
|---|---|

# EXHIBIT

# 2

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Darla D. Langkamp**
P.O. Bo 809
Pryor, OK 74362

From:  **Oklahoma City Area Office**
215 Dean A. McGee Avenue
Suite 524
Oklahoma City, OK 73102

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **564-2016-00897** | **Tandi J. Dillard,** Investigator | **(405) 231-4317** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

**Holly Waldron Cole,**
**Area Office Director**

9/19/2016
(Date Mailed)

Enclosures(s)

cc:

**Mayes Emergency Service Trust Authority**
**4144 Redden Street**
**Pryor, OK 74361**

E. Anthony Mareshie, Attorney
E. ANTHONY MARESHIE PLLC
P.O. Box 330161
Tulsa, OK 74133

# EXHIBIT

# 3