UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RICK LANGKAMP and DARLA LANGKAMP,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Case No. 16-CV-0676-CVE-FHM |
| ) | |
| **MAYES EMERGENCY SERVICES TRUST AUTHORITY and JOHN DOES 1-15, Board Members and Employees, Agents and Representatives of the Mayes Emergency Services Trust Authority,** ) ) ) ) ) ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Now before the Court are defendant Mayes Emergency Services Trust Authority's (MESTA) motion to dismiss (Dkt. # 13), plaintiffs' motion to amend (Dkt. # 25), and plaintiffs' motion to stay (Dkt. # 26). MESTA asks the Court to dismiss plaintiffs' claims, pursuant to Federal Rule of Civil Procedure 12(b), for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. Dkt. # 13, at 7. Plaintiffs respond that the Court has subject matter jurisdiction and that the complaint satisfies federal pleading requirements. Dkt. # 18, at 15.[1] Plaintiffs ask the Court for leave to amend their complaint to assert a discrimination claim against non-party Mayes County Board of County Commissioners (MCBCC). Dkt. # 25, at 1. Plaintiffs also ask the Court to stay this

---

[1]   In response to MESTA's motion to dismiss, plaintiffs' counsel filed two responses (Dkt. ## 18, 19), one for each plaintiff. The two responses are identical. To avoid needlessly repetitious citations, the Court will cite to Dkt. # 18 as the response of both plaintiffs.

suit until their proceedings before the Equal Employment Opportunity Commission (EEOC) have concluded. Dkt. # 26, at 1.

**I.**

Plaintiffs Rick Langkamp and Darla Langkamp, a married couple, filed this action in the Northern District of Oklahoma against MESTA and John Does 1-15, alleged board members and employees, agents, and representatives of MESTA. Dkt. # 2. MESTA is a public trust, organized under Oklahoma law, that provides ambulance service for Mayes County, Oklahoma. Id. at 1, 3. Ms. Langkamp has worked for MESTA as a secretary since 2005. Id. at 3. From 2003 until June 14, 2016, Mr. Langkamp was the executive director of MESTA. Id.

In 2014, Mr. Langkamp sued MESTA and several members of MESTA's board of trustees in the District Court of Mayes County, State of Oklahoma for defamation, false light, intentional infliction of emotional distress, civil conspiracy, and negligence (Langkamp I). Dkt. # 13-1. On February 18, 2016, Mr. Langkamp dismissed with prejudice his claims against MESTA in Langkamp I. Dkt. # 13-3, at 1.

On March 8, 2016, MESTA held a public board meeting, during which the board elected Trent Peper as chairman of the board. Dkt. # 2, at 3. Plaintiffs allege that when Mr. Peper was previously chairman he frequently called Ms. Langkamp and other female MESTA employees "demeaning" names such as "sweetie" and "honey." Id. at 3-4. Plaintiffs also assert that Mr. Peper "inappropriately touched Ms. Langkamp's shoulders." Id. at 4. Ms. Langkamp spoke during the public comment portion of the board meeting in which Mr. Peper was elected chairman. Id. Plaintiffs allege that Ms. Langkamp said, "I will not be putting up with that type of pet name calling that went on the last time this person was in this position." Id. Plaintiffs assert that Ms. Langkamp told the

board she had previously informed two MESTA attorneys about Mr. Peper's conduct and that nothing had changed. Id. at 4-5. Plaintiffs also assert that Ms. Langkamp concluded her comments by telling everyone at the meeting, "You are my witnesses and I will not be putting up with it again." Id.

Plaintiffs allege that after the board meeting, several board members, including Mr. Peper, and MESTA's in-house counsel met in a hallway and had a "very loud conversation" that was overheard by another MESTA employee. Id. at 5. Plaintiffs assert that one of the board members said, "If [Ms. Langkamp] thinks I'm mean now, wait until I get on the other side of the board." Id. On June 14, 2016, MESTA fired Mr. Langkamp. Id. at 7. Plaintiffs allege that as a result of Ms. Langkamp's speech at the board meeting, MESTA retaliated against her by limiting the duties of her position and refusing to provide pay raises as they came due. Id. at 11. Plaintiffs also allege that MESTA retaliated against Mr. Langkamp for "witnessing, investigating, and otherwise participating in Ms. Langkamp's charge of discrimination" by, inter alia, firing Mr. Langkamp. Id. at 6.

On June 14, 2016, Mr. Langkamp brought a second suit against MESTA and several board members in the District Court of Mayes County, State of Oklahoma for claims arising out of MESTA's firing of Mr. Langkamp and the events leading up to his dismissal (Langkamp II). Dkt. # 13-4. On July 22, 2016, MESTA filed a motion to dismiss the claims against it for failure to state a claim. Dkt. # 24-1. On August 15, 2016, Mr. Langkamp filed an amended petition, alleging claims against MESTA for violation of Mr. Langkamp's rights under the Oklahoma Constitution, breach of contract, and negligence. Dkt. # 13-5. On August 26, 2016, MESTA renewed its motion to dismiss (Dkt. # 24-3), which the state court granted on October 24, 2016. Dkt. # 13-6. On November 3, 2016, Mr. Langkamp moved for clarification, or alternatively for a new trial or rehearing,

regarding the court's order. Dkt. # 18-4. The state court denied Mr. Langkamp's motion on November 22, 2016. Plaintiffs filed suit in this Court on November 7, 2016. Dkt. # 2. Ms. Langkamp alleges free speech retaliation in violation of 42 U.S.C. § 1983, retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and common law negligence. Id. at 9-12, 14. Mr. Langkamp alleges retaliation in violation of Title VII. Id. at 12-13.

## II.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without

supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).

The parties ask the Court to take judicial notice of several pleadings filed in Langkamp I and Langkamp II. Dkt. # 13, at 12-13; Dkt. # 18, at 16-17. "[F]acts subject to judicial notice may be considered in a [Rule 12] motion without converting the motion to dismiss into a motion for summary judgment." Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). A court may take judicial notice of "matters that are verifiable with certainty." St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979). Such matters include public records. Id.; see also Tal, 453 F.3d at 1264. The state court pleadings offered by each party are a matter of public record, and the court can thus take judicial notice of the pleadings. See St. Louis Baptist Temple, Inc., 605 F.2d at 1172 ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). Therefore, the Court will take judicial notice of docket numbers 13-1 to 13-9, 18-3 to 18-7, and 24-1 to 24-5, and doing so does not require the Court to convert plaintiff's motion pursuant to Rule 12(d). However, the Court can find no basis for taking judicial notice of a "transcript" of an overheard conversation, emails between plaintiffs' lawyer and defense counsel, or a document given to Ms. Langkamp by MESTA. Thus, the Court refuses to take judicial notice of docket numbers 18-1, 18-2, and 18-8, and will exclude those documents from consideration under Rule 12(d).

### III.

MESTA argues that Ms. Langkamp's retaliation claims under 42 U.S.C. § 1983 and Title VII both fail because Ms. Langkamp has not alleged that she suffered an adverse employment action.[2] Dkt. # 13, at 14-22. A plaintiff must establish that she suffered an adverse employment action to sustain either a First Amendment retaliation claim or a Title VII retaliation claim. See Couch v. Bd. of Trs. of Mem's Hosp. of Carbon Cnty., 587 F.3d 1223, 1236 (10th Cir. 2009) (First Amendment); Annett v. Univ. of Kan., 371 F.3d 1233, 1237 (10th Cir. 2004) (Title VII). There has been some confusion in the Tenth Circuit as to what qualifies as an adverse employment action in the context of First Amendment retaliation. See Hook v. Regents of Univ. of Cal., 394 F. App'x 522, 534-35 (10th Cir. 2010).[3]

> In [Couch v. Board of Trustees of Memorial Hospital of Carbon County, 587 F.3d 1223, 1236 (10th Cir. 2009)], [the Tenth Circuit] clarified the parameters of First Amendment retaliation protection, explaining that [it] consider[s] an employment action to be adverse in the First Amendment retaliation setting if it 'would deter a reasonable person from exercising his First Amendment rights.' 587 F.3d at 1238 (quotation, citation, and alteration omitted). This test is identical to the test which is applied in Title VII retaliation claims. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

Hook, 394 F. App'x at 535; see also Gerald v. Locksley, 785 F. Supp. 2d 1074, 1103 & n.3 (D.N.M. 2011) (explaining the adverse employment action standards in the Tenth Circuit). As the Tenth

---

[2]   MESTA also argues that plaintiff has failed to state a claim for discrimination under Title VII or restriction of free speech in violation of § 1983. Dkt. # 13, at 14-22. However, plaintiffs assert that Ms. Langkamp's Title VII and § 1983 claims are retaliation claims and that Ms. Langkamp is not alleging a Title VII discrimination or restriction of free speech claim. Dkt. # 18, at 17, 28. Thus, the Court need not address MESTA's arguments on discrimination or restriction of free speech because Ms. Langkamp is asserting no such claims.

[3]   This and all other unpublished opinions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

6

Circuit has held that the standards are the same, the Court will analyze both Ms. Langkamp's § 1983 and Title VII retaliation claims under the same adverse employment action standard.

Whether an employment action is adverse should be evaluated on a case-by-case basis. Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004). Courts should liberally construe the phrase adverse employment action. Gunnell v. v. Utah Valley State Coll., 152 F.3d 1253, 1264 (10th Cir. 1998); see also Hillig v. Rumsfeld, 381 F.3d 1028, 1033 (10th Cir. 2004). "Such actions are not simply limited to monetary losses in the form of wages or benefits." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1217 (10th Cir. 2003); see also Gunnell, 152 F.3d at 1264 (holding that co-worker hostility or retaliatory harassment could constitute an adverse employment action). However, "'a mere inconvenience or an alteration of job responsibilities' is not an adverse employment action." Hillig, 381 F.3d at 1031 (quoting Berry v. Stevinson Chevrolet, 74 F.3d 980, 986-87 (10th Cir. 1996)). "An adverse employment action constitutes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

Here, Ms. Langkamp asserts in the complaint that she has suffered a "restriction of job duties and refusal to provide raises as they came due." Dkt. # 2, at 11. Construing these allegations in the light most favorable to Ms. Langkamp, they are enough to plausibly set forth that she has suffered an adverse employment action. An adverse employment action may have occurred when an employee "receives less pay, has less responsibility, or is required to utilize a lesser degree of skill" due to retaliatory action. See Stinnett, 337 F.3d at 1217 (quoting Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir. 1993)). Ms. Langkamp alleges that she has

7

suffered pecuniary losses and a reduction of responsibility at the hands of MESTA due to her speech. Thus, Ms. Langkamp has adequately pled an adverse employment action, and MESTA's motion to dismiss should be denied as to Ms. Langkamp's Title VII and First Amendment retaliation claims.

## IV.

MESTA argues that Ms. Langkamp's negligence claim fails to state a claim for negligence under Oklahoma law and is barred by the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151-172 (OGTCA). Dkt. # 13, at 22. The OGTCA is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. Tuffy's Inc. v. City of Okla. City, 212 P.3d 1158, 1163 (Okla. 2009). The OGTCA adopts the doctrine of sovereign immunity and sets out the specific circumstances under which the state waives its immunity and that of its political subdivisions. Okla. Stat. tit. 51, § 152.1; see also Smith v. City of Stillwater, 328 P.3d 1192, 1198 (Okla. 2014). The OGTCA states that the state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment in situations where a private person or entity would be liable for money damages under Oklahoma law. Okla. Stat. tit. 51, § 153; see also Anderson v. Eichner, 890 P.2d 1329, 1336 (Okla. 1994). However, the OGTCA sets out a list of specific acts for which sovereign immunity is not waived, including "[p]erformance of or the failure to exercise or perform any act or service which is in the discretion of the state or political subdivision or its employees." Okla. Stat. tit. 51, § 155(5). The Oklahoma Supreme Court has explained that § 155(5) should be narrowly interpreted because "[a]lmost all acts of government employees involve some element of choice and judgment." State ex rel. Okla. Dep't of Pub. Safety v. Gurich, 238 P.3d 1, 3 (Okla. 2010) (quoting Nguyen v. State, 788 P.2d 962, 964

8

(Okla. 1990)). "Therefore, 'the government retains its immunity with respect to formulation of policy, but is subject to liability for routine decisions and daily implementation of the policy or planning level decisions.'" Smith, 328 P.3d at 1198 (quoting Gurich, 238 P.3d at 3).

MESTA argues that Ms. Langkamp's negligence claim is barred by the discretionary function exemption of § 155(5). Dkt. # 13, at 23. Ms. Langkamp alleges that MESTA failed to "sufficiently and properly hire, train, supervise, monitor, and retain its employees." Dkt. # 2, at 14. The Oklahoma Supreme Court has not addressed the question of whether a political entity's failure to hire, train, supervise, monitor, and/or retain its employees falls under the § 155(5) discretionary function exception. See Houston v. Indep. Sch. Dist. No. 89 of Okla. Cnty., 949 F. Supp. 2d 1104, 1108 (W.D. Okla. 2013) (finding no controlling decision regarding the applicability of the discretionary function exception to a similar negligence claim). Nonetheless, the clear weight of authority supports finding that hiring, training, supervision, monitoring, and retention are actions that implicate a political entity's policy and planning functions and therefore fall under the discretionary function exemption of § 155(5). See Johnson v. Indep. Sch. Dist. No. 89 of Okla. Cnty., No. CIV-15-680-D, 2016 WL 1270266, at *8 (W.D. Okla. Mar. 31, 2016) (negligent supervision); Burris v. Okla. ex rel. Okla. Dep't of Corrections, No. CIV-13-867-D, 2014 WL 442154, at *9 (W.D. Okla. Feb. 4, 2014) (negligent hiring, training, supervision, and retention); Seals v. Jones, No. 12-DV-569-JED-TLW, 2013 WL 5408004, at *4 (N.D. Okla. Sept. 25, 2013) (negligent hiring and retention); Houston, 949 F. Supp. 2d at 1109 (negligent supervision and retention); Fumi v. Bd. of Conty. Comm'rs of Rogers Cnty., No. 10-CV-769-TCK-PJC, 2011 WL 4608296, at *6 (N.D. Okla. Oct. 3, 2011) (negligent training and supervision); Burns v. Holcombe, No. 09-CV-152-JHP, 2010 WL 2756954, at *15 (E.D. Okla. July 12, 2010) (negligent hiring,

training, and supervision); Jackson v. Okla. City Pub. Schs., 333 P.3d 975, 979 (Okla. Civ. App. 2014) (negligent hiring, training, and supervision). Therefore, Ms. Langkamp's claim that MESTA failed to "sufficiently and properly hire, train, supervise, monitor, and retain its employees" is barred by the OGTCA's discretionary function exception.

MESTA also argues that Ms. Langkamp fails to assert a claim for negligence because she asserts only mental anguish damages. Dkt. # 13, at 26. Ms. Langkamp asserts that as a result of MESTA's negligence, she "sustained significant personal injuries including fear of the future, emotional distress, and degradation/humiliation." Dkt. # 2, at 14. Under Oklahoma law, negligent infliction of emotional distress is not an independent tort, but a version of the tort of negligence. Kraszewski v. Baptist Med. Ctr. of Okla., Inc., 916 P.2d 241, 243 n.1 (Okla. 1996). Thus, "the traditional elements of duty, breach of duty, causation, and damages apply." Wilson v. Muckala, 303 F.3d 1207, 1213 (10th Cir. 2002) (applying Oklahoma law) (citing Kraszewski, 916 P.2d at 245). Oklahoma courts do not permit recovery for mental pain and anguish unless it is caused by physical suffering or the mental anguish inflicts physical suffering. Ellington v. Coca Cola Bottling Co. of Tulsa, Inc., 717 P.2d 109, 110 (Okla. 1986) ("[T]he plaintiff may recover for mental anguish where it is caused by physical suffering and may also recover for mental anguish which inflicts physical suffering."); see also Wilson, 303 F.3d at 1213 ("In Oklahoma, damages for mental anguish are recoverable only if they are produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish."); St. Louis S.F. Ry. Co. v. Keifler, 150 P. 1026, 1028 (Okla. 1915) ("[I]t is the law of Oklahoma that no recovery can be had for mental suffering, which is not produced by, connected with, or the result of physical suffering or injury, to the person enduring the mental anguish."). Plaintiff asserts only mental anguish damages with no

10

accompanying physical suffering. Therefore, plaintiff has failed to state a negligence claim under Oklahoma law.

## V.

MESTA argues that Mr. Langkamp's Title VII retaliation claim is barred by the doctrines of res judicata and claim splitting. Dkt. # 13, at 29-36. To determine the preclusive effect of Langkamp I and Langkamp II on this suit, the Court must look to Oklahoma law on res judicata. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."); see also Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694 (10th Cir. 2004) ("We apply Oklahoma state law to determine the preclusive effect, if any, of the Pittsburg County and Oklahoma proceedings on this federal court action.") (citing McFarland v. Childers, 212 F.3d 1178, 1185 (10th Cir. 2000)).

Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pan. Processes, S.A. v. Cities Serv. Co., 796 P.2d 276, 283 n.27 (Okla. 1990) (emphasis omitted). Thus, for a prior judgment to preclude Mr. Langkamp's claim in this suit, four requirements must be met: (1) the prior judgment was final; (2) the prior judgment was on the merits; (3) the prior action involved the same parties or their privies; and (4) the issues raised in the current action were

litigated in the prior action <u>or</u> could have been raised in that action. See <u>Dearing v. State ex rel. Comm'rs of Land Office</u>, 808 P.2d 661, 664-65 (Okla. 1991).

<u>Langkamp I</u> has no preclusive effect on this case. In <u>Langkamp I</u>, Mr. Langkamp alleged that certain MESTA board members and Mayes County employees defamed him and were impermissibly seizing control of MESTA operations. Dkt. # 13-1, at 3-5; Dkt. # 13-2, at 3-7. Mr. Langkamp voluntarily dismissed <u>Langkamp I</u> with prejudice on February 18, 2016. Dkt. # 13-3, at 1. Mr. Langkamp's Title VII claim alleges that MESTA retaliated against him for helping Ms. Langkamp in reporting sexual harassment and filing a complaint with the EEOC for discrimination. Dkt. # 2, at 12. <u>Langkamp I</u> and Mr. Langkamp's current Title VII claim are related in that they involve many of the same people and Mr. Langkamp's allegations in both generally arise out of the same hostile situation. However, <u>Langkamp I</u> has nothing to do with Ms. Langkamp, her sexual harassment allegations, retaliation, or Mr. Langkamp's termination from MESTA. Moreover, Mr. Langkamp's retaliation claim could not have been brought in <u>Langkamp I</u> because the factual basis for the claim had not yet occurred. Mr. Langkamp's alleged protected activities and MESTA's alleged retaliation all occurred on or after Ms. Langkamp spoke at the public board meeting on March 8, 2016, weeks after <u>Langkamp I</u> was dismissed. Therefore, the issues in Mr. Langkamp's Title VII claim were not litigated in <u>Langkamp I</u>, nor could they have been raised in that suit.

What, if any, preclusive effect <u>Langkamp II</u> has on Mr. Langkamp's current Title VII retaliation claim is a more complicated matter. It is uncontested that Mr. Langkamp and MESTA were parties to <u>Langkamp II</u>, and that the judgment in <u>Langkamp II</u> was final. But Mr. Langkamp argues that <u>Langkamp II</u> was not decided on the merits, that his Title VII claim was not litigated,

and that he could not have brought his Title VII claim in Langkamp II because he did not yet have a right to sue letter from the EEOC. Dkt. # 18, at 35-40.

Mr. Langkamp's amended petition in Langkamp II asserted claims against MESTA for violating his due process rights under the Oklahoma Constitution by firing him without all board seats filled, breach of contract stemming from MESTA's alleged refusal to fill two vacant board seats, and negligence for "failing to adequately and properly hire, train, supervise, monitor, and retain its employees." Id. at 11-16. Mr. Langkamp also asserted causes of action against individual board members for intentional infliction of emotional distress and civil conspiracy, and asked the court to remove certain members from the board of trustees. Id. at 16-20. In its motion to dismiss the amended petition, MESTA argued that Mr. Langkamp failed to state a claim against it because (1) MESTA's trust indenture allowed it to act with fewer than the full eleven-member board as long as a majority of the board acted; (2) Mr. Langkamp was an at-will employee; (3) Mr. Langkamp's negligence claim was barred by the OGTCA; (4) MESTA does not have the authority under Oklahoma law to remove trustees; (5) the OGTCA barred Mr. Langkamp's claim for punitive damages; and (6) some of Mr. Langkamp's claims were barred by res judicata. Dkt. # 24-3. When the state court dismissed Langkamp II, it stated that it did so after "carefully consider[ing]" MESTA's motion to dismiss. Dkt. # 13-6. Mr. Langkamp moved for clarification (Dkt. # 18-4), but the state court denied his motion, reiterating that it dismissed his case on the basis of MESTA's motion to dismiss. Dkt. # 13-7.

"'A judgment on the merits' is one that disposes of 'the real or substantial grounds of action or defense as distinguished from matters of practice, procedure or form.'" Points v. Okla. Pub. Co., 672 P.2d 1146, 1147 n.3 (Okla. 1983) (quoting Flick v. Crouch, 434 P.2d 256, 261 (Okla. 1967)).

The state court did not expound upon its reasons for dismissing Langkamp II, but it clearly stated that it was doing so on the basis of MESTA's motion to dismiss. In its motion to dismiss, MESTA's arguments were addressed solely to the substance of Mr. Langkamp's claims. None of MESTA's arguments relied on procedural or technical issues. Thus, the state court's order dismissing Mr. Langkamp's case must have been on the merits.

As the Oklahoma Supreme Court has noted, often the most difficult aspect of applying claim preclusion is defining the term "claim." Miller v. Miller, 956 P.2d 887, 987 (Okla. 1998). Under Oklahoma law, what is a claim is determined by the underlying transaction, not the specific theory of liability asserted. See Retherford v. Halliburton Co., 572 P.2d 966, 969 (Okla. 1977) ("[T]his jurisdiction is committed to the wrongful act or transactional definition of 'cause of action.' Thus, no matter now many 'rights' of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication."). Here, both Langkamp II and Mr. Langkamp's Title VII claim arise, at least in part, from the same transaction – his termination from MESTA. In Langkamp II, Mr. Langkamp alleged that MESTA violated his due process rights under the Oklahoma Constitution and breached MESTA's trust indenture when Mr. Langkamp was fired by a board with two vacant seats. In his Title VII claim, Mr. Langkamp alleges that MESTA retaliated against him for assisting his wife in reporting sexual harassment by, inter alia, firing him from his position as executive director of MESTA. Moreover, Mr. Langkamp asserted in his amended petition the following: "[Mr. Langkamp], a witness to Ms. Langkamp's complaints of sexual harassment, commenced his charge of discrimination process with the EEOC on June 2, 2016. [Mr. Langkamp] alleges inter alia that he was retaliated against because he was a witness and participated in . . . reporting the allegations

14

against MESTA." Dkt. # 13-5, at 6. Thus, under Oklahoma's transactional definition of cause of action, Langkamp II bars Mr. Langkamp's Title VII claim unless it could not have been brought in Langkamp II.

A claim will not be barred by res judicata if it could not have been brought in the prior adjudication. See Wilson v. Kane, 852 P.2d 717, 723 (Okla. 1993). Mr. Langkamp argues that his retaliation claim could not have been brought in Langkamp II because he did not have a right to sue letter from the EEOC until September 19, 2016. Dkt. # 18, at 38-39. Under Title VII, a plaintiff must obtain a right to sue letter from the EEOC as a prerequisite to suit. 42 U.S.C. § 2000e-5(f)(1); Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1310 (10th Cir. 2005). Thus, until September 19, 2016, Mr. Langkamp could not bring his Title VII claim in Langkamp II. However, once he received his right to sue letter, Mr. Langkamp could have brought his retaliation claim against MESTA, and at that time Langkamp II was pending before the state court. In fact, on September 19, 2016, the briefing on MESTA's motion to dismiss was not yet complete, and it would be over a month before the court dismissed Mr. Langkamp's case. Mr. Langkamp argues that he attempted to amend his petition in Langkamp II to assert his Title VII claim. Dkt. # 18, at 40-41. But Mr. Langkamp never asked that court for leave to amend his petition to add a Title VII claim. In his response to MESTA's motion to dismiss, Mr. Langkamp asked the court, in the alternative to denying MESTA's motion, to stay the case until he could "cure pleading sufficiency defects." Dkt. # 24-4, at 22. Mr. Langkamp did not assert that he had a claim pending before the EEOC that he wanted to add to his suit when it he got a right to sue letter. Mr. Langkamp asked the Court for the opportunity to amend only to cure deficiencies in his current claims. The first time that Mr.

Langkamp informed the state court that he had an additional claim was in his motion for clarification, in which Mr. Langkamp asserted:

> Almost immediately prior to the entry of the subject order, [Mr. Langkamp] was communicating with MESTA's counsel about filing a second amended petition in order [to] assert claims that had only become actionable. It was these anticipated claims that in part prompted [Mr. Langkamp] as part of his response to [MESTA's motion to dismiss] to ask the Court to grant him the opportunity to amend his pleadings if it thought the dispositive motions had any merit.

Dkt. # 18-4, at 5. Mr. Langkamp did not explain to that court that he had a Title VII claim and had only recently received his right to sue letter.

The Court finds Mr. Langkamp's argument that he could not have brought his Title VII claim in Langkamp II unconvincing. Mr. Langkamp asserted in his amended petition that he had a claim pending before the EEOC, Dkt. # 13-5, at 6, but he failed to inform the state court that he would be seeking to assert that claim in Langkamp II once he was able. Once he had the right to sue on the Title VII claim, Mr. Langkamp failed to ask the state court for leave to amend his petition to add his Title VII claim, even though over a month passed between receiving the right to sue letter and the court's order granting MESTA's motion to dismiss. Mr. Langkamp waited until after the state court dismissed his case before informing the court he had an additional claim he wished to assert, and even then he only vaguely informed the court that he had "claims that had only become [recently] actionable." Finally, before the state court ruled on his motion for clarification, Mr. Langkamp filed suit in this Court asserting his Title VII claim.

Now Mr. Langkamp argues that "[t]he only conceivable explanation" is that the state court decided it lacked subject matter jurisdiction to hear his Title VII claim. Dkt. # 18, at 41. First, the state court certainly had jurisdiction over Mr. Langkamp's Title VII claim. See, e.g., Tafflin v. Levitt, 493 U.S. 455, 458-59 (1990) (discussing state courts' concurrent jurisdiction to decide cases

arising under federal law absent an act of Congress granting federal courts exclusive jurisdiction). Second, the state court could not have decided it did not have jurisdiction over Mr. Langkamp's Title VII claim because the state court <u>did not know</u> that Mr. Langkamp had a Title VII claim he wished to assert. Mr. Langkamp mentioned his pending claim before the EEOC in his amended petition, but he never told the court he had a right to sue letter or that he wished to allege a Title VII claim. The state court did not deny Mr. Langkamp's request to amend the petition to add a Title VII claim; the state court never had the opportunity because Mr. Langkamp never made the request.

<u>Langkamp II</u> and Mr. Langkamp's Title VII claim arise out of Mr. Langkamp's termination from MESTA, and therefore, under Oklahoma law, <u>Langkamp II</u> bars the Title VII claim unless the second claim could not have been brought in the earlier suit. Mr. Langkamp had ample opportunity to at least attempt to bring his Title VII claim in <u>Langkamp II</u>, but he failed to do so. Thus, Mr. Langkamp's Title VII claim is barred by res judicata.

**VI.**

Plaintiffs ask the Court for leave amend the complaint to allow Ms. Langkamp to assert Title VII retaliation and discrimination claims against MCBCC based on similar allegations as those in this suit. Dkt. # 25, at 1. MESTA objects, arguing that plaintiffs are attempting to delay these proceedings and amendment would be futile. Dkt. # 28.

Under Federal Rule of Civil Procedure 15(a), leave to amend should be freely given absent a reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." <u>Foman v. Davis</u>, 371 U.S. 178 (1962); <u>see also</u> <u>Minter v. Prime Equip. Co.</u>, 451 F.3d 1196, 1204 (10th Cir. 2006).

17

MESTA asks the Court to consider <u>Langkamp I</u> and <u>Langkamp II</u> in considering whether it will allow Ms. Langkamp the opportunity to assert her new claim. However, Ms. Langkamp was not a party to <u>Langkamp I</u> or <u>Langkamp II</u>. She has filed one complaint regarding this matter and now seeks leave to add a related claim that became actionable on February 15, 2017. It is not clear to the Court that amendment would be futile, and MESTA has provided no evidence that Ms. Langkamp has acted with undue delay or in bad faith, or that an additional claim asserted against a different defendant would cause MESTA undue prejudice. Therefore, Ms. Langkamp may amend her complaint to assert discrimination and retaliation claims against MCBCC.

## VII.

Plaintiffs also ask the Court to stay this case until resolution of Mr. Langkamp's pending claim against MCBCC before the EEOC. Dkt. # 26, at 1. MESTA objects, arguing that a stay would cause undue delay of this litigation. Dkt. # 29, at 1. The Court agrees with MESTA. Mr. Langkamp's sole claim against MESTA has been dismissed. As Mr. Langkamp no longer has a claim in this matter, a stay to allow a claim of his to become actionable would serve no purpose beyond delaying these proceedings. If Mr. Langkamp wishes to bring a new suit once the EEOC concludes its proceedings he is free to do so, but this suit will proceed with Ms. Langkamp as the sole plaintiff.

**IT IS THEREFORE ORDERED** that defendant Mayes Emergency Services Trust Authority's motion to dismiss (Dkt. # 13) is **granted in part and denied in part**: it is **granted** as to Darla Langkamp's negligence claim and Rick Langkamp's Title VII retaliation claim; it is **denied** as to Darla Langkamp's retaliation claims under Title VII and 42 U.S.C. § 1983.

**IT IS FURTHER ORDERED** that plaintiffs' motion to amend (Dkt. # 25) is **granted**, and Darla Langkamp may file an amended complaint, consistent with the rulings herein, no later than **March 10, 2017**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to stay (Dkt. # 26) is **denied**. **Plaintiff Rick Langkamp is terminated as a party in this matter.**

**DATED** this 3rd day of March, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE