UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICK LANGKAMP and DARLA LANGKAMP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 16-CV-0676-CVE-FHM |
| | ) | |
| MAYES EMERGENCY SERVICES TRUST AUTHORITY, BOARD OF COUNTY COMMISSIONERS OF MAYES COUNTY, and JOHN DOES 1-15, Board Members and Employees, Agents and Representatives of the Mayes Emergency Services Trust Authority, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court are defendant Board of County Commissioners of Mayes County's

(Mayes BCC) motion to dismiss (Dkt. # 46) and defendant Mayes Emergency Services Trust

Authority's (MESTA) motion to dismiss certain claims (Dkt. # 49).

**I.**

Plaintiffs Rick Langkamp and Darla Langkamp, a married couple, filed this action in the

Northern District of Oklahoma against MESTA and John Does 1-15, alleged board members and

employees, agents, and representatives of MESTA. Dkt. # 2. MESTA is a public trust, organized

under Oklahoma law, that provides ambulance service for Mayes County, Oklahoma. Dkt. # 43 at

1, 4. Ms. Langkamp has worked for MESTA as a secretary since 2005. Id. at 4. From 2003 until

June 14, 2016, Mr. Langkamp was the executive director of MESTA. Id.

In 2014, Mr. Langkamp sued MESTA and several members of MESTA's board of trustees (MESTA Board) in the District Court of Mayes County, State of Oklahoma for defamation, false light, intentional infliction of emotional distress, civil conspiracy, and negligence (Langkamp I). Dkt. # 13-1. On February 18, 2016, Mr. Langkamp dismissed with prejudice his claims against MESTA in Langkamp I. Dkt. # 13-3, at 1.

On March 8, 2016, MESTA held a public board meeting, during which the board elected Trent Peper as chairman of the board. Dkt. # 43, at 4. Plaintiffs allege that when Mr. Peper was previously chairman he frequently called Ms. Langkamp and other female MESTA employees "demeaning" names such as "sweetie" and "honey." Id. Plaintiffs also assert that Mr. Peper "inappropriately touched Ms. Langkamp's shoulders." Id. Ms. Langkamp spoke during the public comment portion of the board meeting in which Mr. Peper was elected chairman. Id. at 5. Plaintiffs allege that Ms. Langkamp said, "I will not be putting up with that type of pet name calling that went on the last time this person was in this position." Id. Plaintiffs assert that Ms. Langkamp told the board she had previously informed two MESTA attorneys about Mr. Peper's conduct and that nothing had changed. Id. at 5-6. Plaintiffs also assert that Ms. Langkamp concluded her comments by telling everyone at the meeting, "You are my witnesses and I will not be putting up with it again." Id. at 6. Plaintiffs allege that at least one Mayes BCC commissioner was present at the meeting. Id. Plaintiffs allege that after the board meeting, several board members, including Mr. Peper, and MESTA's in-house counsel met in a hallway and had a "very loud conversation" that was overheard by another MESTA employee. Id. Plaintiffs assert that one of the board members said, "If [Ms. Langkamp] thinks I'm mean now, wait until I get on the other side of the board." Id.

On June 2, 2016, Mr. Langkamp submitted an intake questionnaire to the Equal Employment Opportunity Commission (EEOC).[1] Id. at 9. On June 14, 2016, MESTA fired Mr. Langkamp. Id. at 10. On July 7, 2016, Mr. Langkamp signed his EEOC charge of discrimination, which asserted claims against MESTA for retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (ADA). Dkt. # 54-12. Mr. Langkamp asserts that, around July 9, 2016, he informed the EEOC that the had been terminated and wished to add that information to his charge of discrimination. Dkt. # 43, at 11. After the EEOC allegedly told him he must file a subsequent charge of discrimination, Mr. Langkamp filed a second intake questionnaire on July 26, 2016. Id.

On June 14, 2016, Mr. Langkamp brought a second suit against MESTA and several board members in the District Court of Mayes County, State of Oklahoma for claims arising out of MESTA's firing of Mr. Langkamp and the events leading up to his dismissal (Langkamp II). Dkt. # 13-4. On July 22, 2016, MESTA filed a motion to dismiss the claims against it for failure to state

---

[1]     To file a charge with the EEOC, a complainant must first complete an intake questionnaire to assist the EEOC in developing a charge. Fed. Express Corp. v. Holowecki, 552 U.S. 389, 417 (2008) (Thomas, J., dissenting). "An EEOC investigator then conducts a precharge interview, covering a range of topics, including applicable laws, the complainant's allegations and other possibly discriminatory practices, confidentiality, time limits, notice requirements, and private suit rights." Id. at 417-18 (citation omitted). Based on the information collected, the investigator drafts a charge, assigns a charge number, and begins investigating the allegations. Id. at 418. The draft charge is then sent to the complainant, who completes the charge by signing and returning it to the EEOC. Id. After the investigation is complete, the EEOC sends the complainant a right to sue letter, which allows the complainant to file a civil action asserting the claims covered by the charge of discrimination. See 29 C.F.R. § 1601.28(b). If the complainant has not received a right to sue letter within 180 days of filing of a charge, the complainant may request a right to sue letter. Id. at § 1601.28(a).

a claim. Dkt. # 24-1. On August 15, 2016, Mr. Langkamp filed an amended petition, alleging claims against MESTA for violation of his rights under the Oklahoma Constitution, breach of contract, and negligence. Dkt. # 13-5. On August 26, 2016, MESTA renewed its motion to dismiss (Dkt. # 24-3), which the state court granted on October 24, 2016. Dkt. # 13-6. On November 3, 2016, Mr. Langkamp moved for clarification, or alternatively for a new trial or rehearing, regarding the court's order. Dkt. # 18-4. The state court denied Mr. Langkamp's motion on November 22, 2016. Dkt. # 13-7. Mr. Langkamp received his right to sue letter from his July 7, 2016 charge of discrimination on September 19, 2016. Dkt. # 43, at 11. On October 30, 2016, he signed his second charge, which asserted claims against MESTA for retaliation in violation of Title VII and the ADA. Dkt. # 54-13.

Plaintiffs filed suit in this Court on November 7, 2016. Dkt. # 2. In the original complaint, Ms. Langkamp alleged free speech retaliation in violation of 42 U.S.C. § 1983, retaliation in violation of Title VII, and common law negligence; Mr. Langkamp alleged retaliation in violation of Title VII. Id. at 9-14. On December 28, 2016, MESTA filed a motion to dismiss (Dkt. # 13), arguing that plaintiffs' claims against it should be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. On February 28, 2017, plaintiffs filed a motion to amend (Dkt. # 25), asking the Court for leave to amend their complaint so that Ms. Langkamp could assert Title VII retaliation and discrimination claims against Mayes BCC. Plaintiffs asserted that Ms. Langkamp had received her right to sue letter from the EEOC on February 15, 2017. See Dkt. # 25-1. On March 1, 2017, plaintiffs filed a motion to stay (Dkt. # 26), asking the Court to stay the case until resolution of Mr. Langkamp's then-pending charge of discrimination against Mayes BCC.

On March 3, 2017, the Court entered an opinion and order (Dkt. # 31) ruling on MESTA's motion to dismiss, plaintiffs' motion to amend, and plaintiffs' motion to stay. The Court granted MESTA's motion to dismiss as to Ms. Langkamp's negligence claim because she failed to state a claim under Oklahoma law, and as to Mr. Langkamp's Title VII retaliation claim because it was barred by res judicata. Id. at 8-17. The Court denied MESTA's motion to dismiss as to Ms. Langkamp's retaliation claims under Title VII and § 1983. Id. at 6-8. The Court granted plaintiffs' motion to amend, finding that Ms. Langkamp could "amend her complaint to assert discrimination and retaliation claims against [Mayes BCC]." Id. at 17-18. The Court denied plaintiffs' motion to stay because it would cause undue delay of the litigation. Id. at 18.

Ms. Langkamp filed an amended complaint (Dkt. # 32) asserting the same three claims as the original complaint and adding two claims: a Title VII retaliation claim against Mayes BCC and a claim under the Oklahoma Constitution against MESTA and Mayes BCC. Soon after the amended complaint was filed, plaintiffs filed a motion (Dkt. # 36) asking the Court to alter its opinion and order (Dkt. # 31). Plaintiffs asserted that Mr. Langkamp received a new right to sue letter from the EEOC on March 16, 2017[2] and asked the Court to amend its opinion and order so that Mr. Langkamp could assert Title VII and ADA claims covered by the new right to sue letter. Dkt. # 36, at 2. The Court granted the motion, but cautioned plaintiffs that they "may not alter or amend their amended complaint apart from adding claims covered by the new right to sue letter. Dkt. # 40, at 5.

Plaintiffs filed a second amended complaint (Dkt. # 43), in which Ms. Langkamp alleges claims against MESTA under § 1983, Title VII, and the Oklahoma Constitution and against Mayes

---

[2]     Mr. Langkamp's March 16, 2017 right to sue letter stems from his second charge of discrimination against MESTA, which was signed on October 30, 2016. See Dkt. # 54-13.

BCC under Title VII and the Oklahoma Constitution. Mr. Langkamp alleges claims against Mayes

BCC under the Oklahoma Constitution and against MESTA under Title VII, the ADA, § 1983, the

Oklahoma Constitution, and common law negligence. Mayes BCC now moves to dismiss all claims

against it, and MESTA moves to dismiss plaintiffs' claims under the Oklahoma Constitution and all

Mr. Langkamp's claims against it. Dkt. ## 46, 49.

## II.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),[3] a court

must determine whether the claimant has stated a claim upon which relief may be granted. A motion

to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is

plausible on its face" and the factual allegations "must be enough to raise a right to relief above the

speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562.

Although decided within an antitrust context, Twombly "expounded the pleading standard for all

civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal

determination, a court must accept all the well-pleaded allegations of the complaint as true, even if

doubtful in fact, and must construe the allegations in the light most favorable to a claimant.

Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007);

Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court

---

[3]     As discussed in the Court's June 22, 2017 order (Dkt. # 62), the Court excludes the
following documents from consideration under Rule 12(d): Dkt. ## 49-8, 54-2, 54-4, 54-6,
54-10, 54-11, and 55-1.

need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).

## III.

Plaintiffs' second amended complaint asserts eight claims: (1) plaintiffs allege that MESTA violated their First Amendment rights in violation of 42 U.S.C. § 1983; (2) Ms. Lankgamp alleges that MESTA retaliated against her in violation of Title VII; (3) Ms. Langkamp alleges that Mayes BCC retaliated against her in violation of Title VII; (4) plaintiffs allege that Mayes BCC and MESTA violated their due process and free speech rights under the Oklahoma Constitution; (5) Mr. Langkamp alleges MESTA retaliated against him in violation of Title VII; (6) Mr. Langkamp alleges that MESTA discriminated against him in violation of the ADA; (7) Mr. Langkamp alleges that MESTA retaliated against him in violation of the ADA; and (8) Mr. Langkamp alleges that MESTA negligently failed to provide him a safe workplace. Dkt. # 43. Defendants argue that all of plaintiffs' claims, except Ms. Langkamp's § 1983 and Title VII claims against MESTA, should be dismissed.

Mr. Langkamp has withdrawn his claims against MESTA under § 1983 and the Oklahoma Constitution.[4] Dkt. # 54, at 18-19. The Court will address each remaining challenged claim in turn.

**A.**

Ms. Langkamp alleges a retaliation claim against Mayes BCC under Title VII. Dkt. # 43, at 18-19. Title VII prohibits an employer from retaliating against an employee for opposing any employment practice made unlawful under Title VII. 42 U.S.C. § 2000e-3; Stover v. Martinez, 382 F.3d 1064, 1070 (10th Cir. 2004). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . ." 42 U.S.C. § 2000e. The parties do not dispute that MESTA is Ms. Langkamp's employer under Title VII and that MESTA and Mayes BCC are distinct legal entities, but Mayes BCC argues that Ms. Langkamp has failed to allege facts sufficient to show that it is also her employer under Title VII. See Dkt. # 46, at 3-5; Dkt. # 50, at 11.

Ms. Langkamp argues that she has alleged sufficient facts to show that Mayes BCC is her employer under Title VII through the principals of agency and the theory of joint employers. The Tenth Circuit has explained that there are numerous tests for determining whether an entity is an employer under Title VII, and which test is most appropriate depends on the circumstances of the

---

[4]     It is unclear whether Mr. Langkamp has also withdrawn his claim against Mayes BCC under the Oklahoma Constitution. In their response to Mayes BCC's motion to dismiss, plaintiffs argue that they have properly pled claims under the Oklahoma Constitution. Dkt. # 50, at 18. In their response to MESTA's motion to dismiss, filed approximately a month later, plaintiffs state that "Mr. Langkamp withdraws his [Oklahoma Constitution] and 42 U.S.C. § 1983 claims." Dkt. # 54, at 19. Because it is unclear, the Court will interpret Mr. Langkamp's abandonment of his claim under the Oklahoma Constitution to apply only to the claim against MESTA and not the claim against Mayes BCC.

case. See Cink v. Grant Cnty., Okla., 635 F. App'x 470, 472-74 (10th Cir. 2015)[5]; Knitter v. Corvais

Military Living, LLC, 758 F.3d 1214, 1226 (10th Cir. 2014); Bristol v. Bd. of Cnty. Com'rs of Cnty.

of Clear Creek, 312 F.3d 1213, 1218 n.5 (10th Cir. 2002) (en banc).

The agency test is used when "dealing with a subsidiary and its parent corporation, when the

plaintiff seeks to pierce the corporate veil and hold the parent liable under a federal statute." Bristol,

312 F.3d at 1218 n.5. For a parent to be liable under the agency theory, the plaintiff must establish

that it "exercised a significant degree of control over the subsidiary's decision-making." Frank v.

United States, 3 F.3d 1357, 1362 n.2 (10th Cir. 1993). As an initial matter, it is unclear whether the

agency test is even applicable to this case because Mayes BCC and MESTA are not a parent and

subsidiary. MESTA was created as a public trust under Okla. Stat. tit. 60, § 176, with members of

the MESTA Board as trustees, and Mayes County, acting by and through Mayes BCC, as

beneficiary. Dkt. # 50-2. Members of the MESTA Board are appointed by individual commissioners

of Mayes BCC and must be approved by a majority of the commissioners. Id. at 5. Apart from

appointing the MESTA Board, the trust indenture does not grant Mayes BCC any other control over

MESTA. Ms. Langkamp has provided no argument for why the agency test is appropriate to

determine who is an employer in a trustee/beneficiary relationship, and instead cites a string of cases

holding that an employer is generally liable for the actions of its employees under agency theory.

These cases do nothing to support her argument that Mayes BCC, specifically, is her employer.

The Court need not determine whether the agency test is applicable here because, even if it

were, Ms. Langkamp has failed to allege facts showing that Mayes BCC exercised a significant

---

[5]     This and all other unpublished opinions are not precedential, but they may be cited for their
persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

amount of control over MESTA's decisionmaking. The second amended complaint is remarkably light on factual allegations regarding Mayes BCC. It alleges that at least one Mayes BCC commissioner was present at the March 8, 2016 MESTA board meeting where Ms. Langkamp spoke against Mr. Peper's alleged harassment and that Mayes BCC "ratified the acts of MESTA . . . by failing to take remedial action . . . [and/or] allowing such acts to occur." Id. at 6, 19. The agency test is about control, and neither the fact that a Mayes BCC commissioner was present at the MESTA board meeting or that Mayes BCC failed to intervene show that Mayes BCC was controlling MESTA's decisionmaking. The second amended complaint also alleges that Mayes BCC "intentionally underpopulated" the MESTA Board "in order to abuse, discriminate, and retaliate against Ms. Langkamp and Mr. Langkamp." Dkt. # 43, at 4. It is unclear how failing to appoint board members could harass plaintiffs, and neither the second amended complaint nor plaintiffs' response brief[6] have provided any plausible explanation. Thus, Ms. Langkamp has failed to allege facts establishing Mayes BCC as her employer under the agency test.

Ms. Langkamp's second argument is based on the joint employer test, which the Tenth Circuit has stated "is the appropriate test to use when an employee of one entity seeks to hold another entity liable as an employer." Knitter, 758 F.3d at 1226 (citing Bristol, 312 F.3d at 1218). Because Ms. Langkamp is an employee of MESTA, but is seeking to hold Mayes BCC liable as an employer as well, the joint employer test is appropriate. Under the joint employer test, independent entities are treated as joint employers if they "share or co-determine those matters governing the

---

[6]    Plaintiffs' response brief does contain an ill-conceived argument that Mayes BCC must be controlling MESTA because one of the current Mayes BCC commissioners brought a lawsuit in the Mayes County District Court against Mayes BCC alleging that fact before she was a commissioner. Arguments made by parties in an unrelated suit have no bearing on this case.

essential terms and conditions of employment." <u>Bristol</u>, 312 F.3d at 1218 (quoting <u>Virgo v. Riviera Beach Assoc., Ltd.</u>, 30 F.3d 1350, 1360 (11th Cir. 1994)). "In other words, courts look to whether both entities 'exercise significant control over the same employees.'" <u>Id.</u> (quoting <u>Graves v. Lowery</u>, 117 F.3d 723, 727 (3d. Cir. 1997)). While the agency test concerns Mayes BCC's control over MESTA, the joint employer test concerns Mayes BCC and MESTA's joint control over Ms. Langkamp. Plaintiffs make a conclusory allegation in their brief that Mayes BCC and MESTA "co-determined the essential terms and conditions of employment." But even if that allegation were sufficient to establish Mayes BCC as a joint employer, plaintiffs must support their claims by sufficient factual allegations in their complaint. The second amended complaint contains no allegations that show Mayes BCC and MESTA exercised joint control over Ms. Langkamp. Thus, Ms. Langkamp has failed to allege facts establishing Mayes BCC as her employer under the joint employer test. Because Ms. Langkamp has failed to allege facts showing that Mayes BCC is her employer, her Title VII retaliation claim against Mayes BCC will be dismissed.

**B.**

Ms. Langkamp asserts claims under the Oklahoma Constitution against MESTA and Mayes BCC. Mr. Langkamp asserts a claim under the Oklahoma Constitution against Mayes BCC. Both defendants argue that plaintiffs' claims under the Oklahoma Constitution should be dismissed because plaintiffs have failed to state a claim under Oklahoma law and plaintiffs did not have permission from the Court to add the claims to the second amended complaint. Dkt. # 46, at 5-9; Dkt. # 49, at 15-21. Mayes BCC also argues that the claims against it should be dismissed for failure to comply with the Oklahoma Governmental Tort Claims Act's, Okla. Stat. tit. 51, § 151 <u>et seq.</u>

(OGTCA), notice requirement and failure to plead sufficient facts to support a claim against it. Dkt. # 46, at 9-13.

The OGTCA is usually the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort. Tuffy's, Inc. v. City of Okla. City, 212 P.3d 1158, 1163 (Okla. 2009). In the OGTCA, the Oklahoma legislature adopted the doctrine of sovereign immunity and then waived that immunity when the state or a political subdivision was "liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment . . . where the state or political subdivision, if a private person or entity, would be liable for money damages under [Oklahoma law]." Okla. Stat. tit. 51, §§ 152-153. The OGTCA also created several exceptions to the waiver of sovereign immunity, including claims arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . ." Id. § 155.

In Bosh v. Cherokee County Building Authority, 305 F.3d 994 (Okla. 2013), the Oklahoma Supreme Court confronted a "the alleged conflict between the Oklahoma Constitution, which protects citizens of the State of Oklahoma from unreasonable seizures and the OGTCA which appears to allow the state . . . to elude tort liability when its employees beat and injure a citizen who is detained at one of its facilities." Id. at 997. The plaintiff in Bosh alleged that several jailers assaulted him when he was a pretrial detainee in a state detention center. Id. at 996. The plaintiff asserted a claim under article II, section 30 of the Oklahoma Constitution, which prohibits unreasonable searches and seizures. The United States District Court for the Eastern District of Oklahoma certified questions of law to be answered by the Oklahoma Supreme Court regarding whether the plaintiff could assert a claim of excessive force under article II, section 30 of the Oklahoma Constitution despite the OGTCA's prison, jail, and correctional facility exception. Id. at

12

997. The Oklahoma Supreme Court held that article II, section 30 of the Oklahoma Constitution

provides a private right of action, stating that:

> The OGTCA cannot be construed as immunizing the state completely from all
> liability for violations of the constitutional rights of its citizens. To do so would not
> only fail to conform to established precedent which refused to construe the OGTCA
> as providing blanket immunity, but would also render the Constitutional protections
> afforded the citizens of this State as ineffective, and a nullity. Therefore we answer
> the reformulated question and hold that the Okla. Const. art. 2, § 30 provides a
> private cause of action for excessive force, notwithstanding the requirements and
> limitations of the OGTCA.

Id. at 1001 (footnotes omitted).

The Oklahoma Supreme Court has subsequently considered the scope of Bosh only once,

in Perry v. City of Norman, 341 P.3d 689 (Okla. 2014). The plaintiff in Perry alleged that several

police officers used excessive force against him during a traffic stop in violation of article II, section

30 of the Oklahoma Constitution. Id. at 689-90. The plaintiff argued that he could assert his

Oklahoma Constitutional claim under Bosh. Id. at 690. The Oklahoma Supreme Court held that a

plaintiff may not bring a Bosh claim if he has a remedy under the OGTCA. Id. at 692-93. As the

Oklahoma Supreme Court explained:

> In Bosh, the applicable provisions of the OGTCA expressly immunized the state and
> political subdivisions such as counties and municipalities from liability arising out
> of the operation of prison facilities. Consequently, without the excessive force action
> brought under the Oklahoma Constitution, the Bosh plaintiff would have had no
> avenue for recovery for his injuries whatsoever. . . . Because the plaintiff could have
> brought a claim for excessive force against the City under the OGTCA and
> potentially recovered for that claim, he was not left without a remedy. There is no
> rationale requiring the extension of a Bosh excessive force action brought under the
> Okla. Const. art. 2, § 30 to this cause.

Id. at 692-93 (footnotes omitted).

Although Perry clarified the scope of Bosh in certain cases, what is and is not a Bosh claim

is a still a matter of much debate. Compare Hibben v. Okla. ex. Rel Dep't of Veterans Affairs, No.

13

16-cv-111-TLW, 2017 WL 1239146, at *4 (N.D. Okla. Mar. 31, 2017) (finding Bosh "limited to its facts"), and Koch v. Juber, No. CIV-13-0750-HE, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) ("Bosh should be narrowly interpreted and applied only to excessive force claims."), with Halley v. Okla. ex rel. Okla. State Dep't of Human Servs., 176 F. Supp. 3d 1268, 1275-76 (E.D. Okla. 2016) (holding that Bosh extends to due process claims under article II, section 7 of the Oklahoma Constitution), and Deal v. Brooks, 389P.3d 375, 384 (Okla. Civ. App. 2016) (same). Most relevant to this case is the question of whether Bosh created a private cause of action for any violation of the Oklahoma Constitution where there is no remedy under the OGTCA, or whether Bosh created a private cause of action only for excessive force claims arising under article II, section 30 where there is no remedy under the OGTCA. Here, plaintiffs assert claims under article II, sections 2 (inherent right to life, liberty, and the pursuit of happiness), 3 (right of assembly and petition), 7 (right of due process of law), and 22 (right of free speech and press). Dkt. # 50, at 19-20; Dkt. # 54, at 15-16. Thus, if Bosh did not create private causes of action for violations of the Oklahoma Constitution apart from article II, section 30, plaintiffs have failed to state a claim.

Plaintiffs argue that Bosh created a private cause of action for all violations of the Oklahoma Constitution, but what plaintiffs are asserting (essentially an Oklahoma version of 42 U.S.C. § 1983) goes far beyond the holding of Bosh. In both Bosh and Perry, the Oklahoma Supreme Court clearly held that there is a private right of action for excessive force cases under article II, section 30, not a private right of action for any violation of the Oklahoma Constitution. The holdings are explicitly limited by those terms, and some of Bosh's reasoning is specific to excessive force claims and pretrial detainees. The Oklahoma Supreme Court described its decision in Bosh as an extension of Washington v. Barry, 55 P.3d 1036 (Okla. 2002), which held that a private cause of action may exist

14

for inmates to recover for excessive force under article II, section 9 of the Oklahoma Constitution. Bosh, 305 P.3d at 1000-01. The holding in Bosh relies, at least in part, on the fact that pretrial detainees should be guaranteed more rights than the inmates in Washington, not fewer. Id. at 1001 ("In Washington, we declared that, not withstanding the provision of the OGTCA, a private action for excessive force exists pursuant to the Okla. Const. art. 2, § 9 for incarcerated persons. Having done so, and having explained that those not yet convicted are assured of even greater rights, it would defy reason to hold that pre-incarcerated detainees and arrestees are not provided at least the same protections of their rights, the same cause of action for excessive force under the Okla. Const. art. 2, § 30."). Bosh is specifically concerned with excessive force and pretrial detainees, and the only decision from the Oklahoma Supreme Court interpreting its holding, Perry, decisively narrows its scope. Thus, the Oklahoma Supreme Court has given no indication that Bosh has been extended beyond excessive force claims.

Plaintiffs argue that two cases from the Oklahoma Court of Civil Appeals have expanded the holding of Bosh. In GJA v. Okla. Dep't of Human Servs., 347 P.3d 310 (Okla. Civ. App. 2015), the appellate court held that Bosh "is not limited to its facts and specific holding." Id. at 316. In Deal v. Brooks, 389 P.3d 375 (Okla. Civ. App. 2016), the appellate court held, relying on Bosh and GJA, that a plaintiff could bring a substantive due process claim under article II, section 7 of the Oklahoma Constitution against the Oklahoma Department of Human Services. Id. at 384. Plaintiffs' reliance on GJA and Deal is misplaced. First, the Court is not bound by lower state court decisions, but they may be considered as evidence of how the state supreme court would decide an issue. See Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). GJA held that Bosh is not limited to its facts, but gives little guidance to the actual scope of a Bosh claim because

it ultimately held the plaintiff did not assert a constitutional violation. GJA, 347 P.3d at 317. Deal held that certain due process claims could be brought through Bosh, but six months after Deal, in Howard v. Grady County Criminal Justice Authority, — P.3d —, 2016 WL 8115709 (Okla. Civ. App. 2016), the same court treated the availability of a Bosh due process claim as far from certain. Id. at *1 ("We need not decide whether a cause of action exists for due process violations under Article II, § 7 of the Oklahoma Constitution, because even if such a right exists, Howard has failed to state a claim for relief."). Given the Oklahoma Supreme Court's narrow language and excessive force-specific reasoning discussed above, this Court agrees with the Howard court's reluctance to expand Bosh beyond its express holding.

However, the Court does not need to disregard GJA and Deal because plaintiffs' arguments go beyond even those cases. Bosh is a case about interpreting the OGTCA and providing plaintiffs a remedy for violations of article II, section 30 when the OGTCA's exceptions to the waiver of sovereign immunity bar those claims. The opening sentence of the discussion section frames the issue as a conflict between the Oklahoma Constitution and the OGTCA. Bosh, 305 P.3d at 997. The conclusion is supported by explaining that the OGTCA cannot be construed to completely immunize the state from liability. Id. at 1001. This same language is mirrored in Deal, in which the appellate court explained its holding as follows:

> As in Bosh, where the Oklahoma Supreme Court declined to construe the GTCA so as to immunize the state from constitutionally-based liability for excessive force inflicted on a prisoner while in its custody, we conclude the GTCA does not immunize DHS from liability for certain reckless and deliberate acts that deprive a child of due process rights while in state custody.

Deal, 389 P.3d at 384. One of the driving concerns of Bosh was that the legislature had immunized the state by creating large exceptions to the waiver of sovereign immunity. That this was a primary

concern of the Oklahoma Supreme Court is reinforced by <u>Perry</u>, which held that, if the plaintiff could recover under the OGTCA, there was no reason to allow him to bring a <u>Bosh</u> claim. The OGTCA's exceptions include claims arising from detention centers (at issue in <u>Bosh</u>) and the placement of children (at issue in <u>Deal</u>). Here, there is no conflict between the Oklahoma Constitution and the OGTCA because there is no applicable exception to the waiver of sovereign immunity. If the Court were to hold that a cause of action is available under the Oklahoma Constitution where there is no OGTCA conflict, it would go beyond not only <u>Bosh</u>, but also <u>Deal</u>. The Court declines to extend <u>Bosh</u> far beyond its holding to create a new cause of action. Therefore, plaintiffs have failed to state a claim under the Oklahoma Constitution against either defendant.[7]

**C.**

Mr. Langkamp alleges claims against MESTA for discrimination under the ADA and retaliation under Title VII and the ADA. Dkt. # 43, at 21-25. MESTA argues that these claims are barred by res judicata. Dkt. # 49, at 28-40. The Court previously discussed the preclusive effect of <u>Langkamp I</u> and <u>Langkamp II</u> on this suit in its March 3, 2017 opinion and order. Dkt. # 31, at 11-17. In that decision, the Court found that Mr. Langkamp's Title VII retaliation claim was barred by res judicata because he could have brought his claim in <u>Langkamp II</u>. <u>Id.</u> at 15-17. Under Title VII and the ADA, a plaintiff must obtain a right to sue letter from the EEOC as a prerequisite to suit. 42 U.S.C. § 2000e-5(f)(1) (Title VII); <u>Id.</u> § 12117(a) (ADA); <u>Shikles v. Sprint/United Mgmt. Co.</u>, 426 F.3d 1304, 1310 (10th Cir. 2005) (Title VII); <u>Stone v. Dep't of Aviation</u>, 453 F.3d 1271, 1276 (10th

---

[7]     Because the Court finds that plaintiffs have failed to state a claim under the Oklahoma Constitution, it need not address defendants other arguments that the <u>Bosh</u> claims against them should be dismissed. However, plaintiffs' addition of their <u>Bosh</u> claims to the first and second amended complaints without the Court's permission is addressed below. <u>See</u> <u>infra</u> section III.E.

Cir. 2006) (ADA). Mr. Langkamp's right to bring the Title VII claim considered by the Court in its March 3, 2017 decision came from his September 19, 2016 right to sue letter. The Title VII and ADA claims Mr. Langkamp now asserts are covered by his second right to sue letter, dated March 16, 2017. His first right to sue letter is based on the charge he signed on July 7, 2016 that was created from his June 2, 2016 intake questionnaire. The second right to sue letter originates from his July 26, 2016 intake questionnaire and October 30, 2016 charge. Mr. Langkamp asserts that the first right to sue letter covers his discrimination and retaliation claims up to, but not including, his termination, and his second right to sue letter covers his discrimination and retaliation claims stemming from his June 14, 2016 termination, including retaliation for filing his first charge of discrimination.

Before addressing the issue of res judicata, the Court will consider the scope of Mr. Langkamp's second charge. An EEOC charge of discrimination includes a section where the basis for the charge is indicated by checking one or more of the boxes following the statement "discrimination based on." Mr. Langkamp's first charge checks the boxes for both retaliation and disability, Dkt. # 54-12, but his second charge checks the box for only retaliation, Dkt. # 54-13. The narrative section of the charge, in which the particulars of the charge are further explained, reinforces that the second charge asserts only <u>retaliation</u> claims under Title VII and the ADA. <u>See id.</u> ("I believe I have been retaliated against because I participated and/or engaged in a protected activity in violation of [Title VII] and in violation of [the ADA]."). Yet Mr. Langkamp asserts an ADA <u>discrimination</u> claim in the second amended complaint and alleges that he may bring it pursuant to his second right to sue letter. Mr. Langkamp must allege that he has exhausted his administrative remedies to bring his ADA discrimination claim, and the right to sue letter that he

18

argues satisfies that requirement does not encompass that claim. Thus, Mr. Langkamp's ADA discrimination claim fails regardless of the issue of res judicata.

Turning to what, if any, preclusive effect Langkamp I and/or Langkamp II have on this suit, the Court must look to Oklahoma law on res judicata. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) ("It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."); see also Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester, 358 F.3d 694 (10th Cir. 2004) ("We apply Oklahoma state law to determine the preclusive effect, if any, of the Pittsburg County and Oklahoma proceedings on this federal court action.") (citing McFarland v. Childers, 212 F.3d 1178, 1185 (10th Cir. 2000)). Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pan. Processes, S.A. v. Cities Serv. Co., 796 P.2d 276, 283 n.27 (Okla. 1990) (emphasis omitted). Thus, for a prior judgment to preclude Mr. Langkamp's claim in this suit, four requirements must be met: (1) the prior judgment was final; (2) the prior judgment was on the merits; (3) the prior action involved the same parties or their privies; and (4) the issues raised in the current action were litigated in the prior action or could have been raised in that action. See Dearing v. State ex rel. Comm'rs of Land Office, 808 P.2d 661, 664-65 (Okla. 1991).

The Court will first address the preclusive effect of Langkamp II. The Court has already found that Mr. Langkamp and MESTA were parties to Langkamp II and the judgment in Langkamp II was final and on the merits. Dkt. # 31, at 12-14. Therefore, the only question remaining is whether

Mr. Langkamp's retaliation claims were, or could have been, raised in <u>Langkamp II</u>. Under Oklahoma law, what is a claim is determined by the underlying transaction, not the specific theory of liability asserted. <u>See</u> <u>Retherford v. Halliburton Co.</u>, 572 P.2d 966, 969 (Okla. 1977) ("[T]his jurisdiction is committed to the wrongful act or transactional definition of 'cause of action.' Thus, no matter now many 'rights' of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication."). Here, both <u>Langkamp II</u> and Mr. Langkamp's Title VII claim arise from the same transaction — his termination from MESTA. In <u>Langkamp II</u>, Mr. Langkamp alleged that MESTA violated his due process rights under the Oklahoma Constitution and breached MESTA's trust indenture when Mr. Langkamp was fired by a board with two vacant seats. In his Title VII retaliation claim, Mr. Langkamp alleges that MESTA retaliated against him for assisting his wife in reporting sexual harassment by firing him from his position as executive director of MESTA. In his ADA retaliation claim, Mr. Langkamp alleges that MESTA retaliated against him for obtaining medical treatment and seeking reasonable accommodation by terminating his employment. Thus, under Oklahoma's transactional definition of cause of action, <u>Langkamp II</u> bars Mr. Langkamp's Title VII and ADA retaliation claim unless they could not have been brought in <u>Langkamp II</u>.

A claim will not be barred by res judicata if it could not have been brought in the prior adjudication. <u>See</u> <u>Wilson v. Kane</u>, 852 P.2d 717, 723 (Okla. 1993). Mr. Langkamp argues that his current retaliation claims could not have been brought in <u>Langkamp II</u> because he did not receive his right to sue letter until March 16, 2017. MESTA argues that the Tenth Circuit rejected that argument in <u>Wilkes v. Wyo. Dep't of Emp't Div. of Labor Standards</u>, 314 F.3d 501 (10th Cir. 2002). As the Court has previously explained, the preclusive effect of <u>Langkamp I</u> and <u>Langkamp II</u> are

determined by Oklahoma law because they were litigated in Oklahoma courts. See Dkt. # 31, at 11. However, both parties use federal case law to support their arguments. Because the Court could find no Oklahoma cases that discuss the preclusive effect of prior litigation on a claim that was pending before an administrative agency during the prior case, the Court will look to the federal cases cited by the parties as persuasive authorities to determine how the Oklahoma Supreme Court would decide the issue. See Bartholic v. Scripto-Tokai Corp., 140 F. Supp. 2d 1098, 1108 (D. Colo. 2000) (citing Heller Int'l Corp. v. Sharp, 974 F.2d 850, 858 (7th Cir. 1992)).

MESTA argues that Langkamp II precludes Mr. Langkamp's Title VII and ADA retaliation claims under Wilkes. In Wilkes, the plaintiff alleged that her employer passed her over for a promotion in favor of a probationary employee who was romantically involved with the plaintiff's supervisor. 314 F.3d at 502. The plaintiff alleged that, after she complained to management, her supervisor harassed her until she quit her job. Id. at 502-03. The plaintiff filed a charge with the EEOC alleging Title VII retaliation, and then filed a suit in federal court alleging a claim under the Equal Pay Act of the Fair Labor Standards Act, 29 U.S.C. § 206(d), against her employer and a claim under § 1983 against her supervisor. Id. at 503. The defendants made an offer of judgment pursuant to Federal Rule of Civil Procedure 68, which the plaintiff accepted. Id. After judgment was entered against the defendants, plaintiff received her right to sue letter from the EEOC and initiated a new federal suit asserting her Title VII claim Id. The Tenth Circuit affirmed the district court's grant of summary judgment based on res judicata. Id. at 506. The Tenth Circuit held that the plaintiff's lawsuits arose from the same transaction, her employment relationship, and thus, must be brought in one suit or be barred from subsequent litigation. Id. at 504-05. The plaintiff argued that

she could not have brought her Title VII claim in the first suit because she had not received her right to sue letter, but the Tenth Circuit rejected plaintiff's argument. Id. at 505.

Mr. Langkamp argues that Wilkes is inapplicable because (1) his claims are not a part of his employment relationship with MESTA; (2) Wilkes involved a motion for summary judgment; (3) no charge was filed with the EEOC when Langkamp II was dismissed; and (4) the plaintiff in Wilkes accepted an offer of judgment. Dkt. # 54, at 42-43. First, Mr. Langkamp's retaliation claims are clearly a part of his employment relationship with MESTA because they allege MESTA retaliated against Mr. Langkamp by terminating his employment. Further, the importance of the employment relationship in Wilkes was that the Tenth Circuit determined that all claims arising out of the employment relationship were a part of the same claim under the transactional approach. Wilkes, 314 F.3d at 504. As discussed above, Mr. Langkamp's claims in Langkamp II and his current retaliation claims are the same claim because they arise from the same transaction, Mr. Langkamp's termination, which is even narrower than the employment relationship transaction found in Wilkes.

Second, that Wilkes involved a motion for summary judgment does not render it inapplicable. The district court in Wilkes found that it could not rule on the defendant's motion to dismiss without considering documents outside the pleadings and therefore converted the motion to one for summary judgment. Wilkes, 314 F.3d at 503. Here, the Court does not need to consider matters outside the pleadings to decide the two pending motions to dismiss. The Court has decided that Langkamp II and Mr. Langkamp's retaliation claims involve the same transaction based on Mr. Langkamp's allegations. That there is no need to consider additional matters here does not nullify the legal conclusions addressed in Wilkes.

22

Third, it is irrelevant that Mr. Langkamp's charge was not filed until several days after Langkamp II was dismissed. Mr. Langkamp has not explained how this distinction would affect the outcome of Wilkes, and the Court does not see how it could. Finally, that the plaintiff in Wilkes accepted an offer of judgment is also irrelevant. The Wilkes plaintiff is a less sympathetic party because she chose to end her first lawsuit by accepting the offer of judgment, while Mr. Langkamp did not choose for Langkamp II to end. However, Mr. Langkamp chose to file Langkamp II even though he knew he had claims that would not be actionable until he exhausted his administrative remedies. The Court is unaware of any reason that Mr. Langkamp could not have waited a few months until his claims were all actionable to file Langkamp II. Alternatively, Mr. Langkamp could have asked the state court to stay Langkamp II pending the outcome of the EEOC proceedings.[8] Mr. Langkamp chose to bring Langkamp II when he did, and he cannot now claim that it was completely out of his control that MESTA filed a motion to dismiss and the state court granted it before all his claims pending before the EEOC were fully exhausted.[9]

Mr. Langkamp also argues that his claims are not barred by res judicata under the reasoning of the Court's March 3, 2017 opinion and order. In that decision, the Court found that Langkamp II precluded Mr. Langkamp's Title VII retaliation claim because he received his right to sue letter on that claim while Langkamp II was pending and did not attempt to assert the claim in that suit. Dkt. # 31, at 15-17. Here, Mr. Langkamp did not receive his right to sue letter until months after

---

[8]    As the Court discussed in its March 3, 2017 decision, Mr. Langkamp never told the state court that he had claims pending before the EEOC. Dkt. # 31, at 15-16.

[9]    For similar reasons, Mr. Langkamp's argument that he was denied his full 180 days to file a charge of discrimination fails. See Dkt. # 54, at 36. Because Mr. Langkamp chose to file Langkamp II when he did, he cannot now argue that he was deprived of the time to file a charge with the EEOC because of Langkamp II.

Langkamp II was dismissed. However, that does not mean that Mr. Langkamp's claims are not barred by Langkamp II. In the Court's earlier decision, it did not need to address the issue of whether a claim that was pending before the EEOC when the prior lawsuit ended could be barred by res judicata under Oklahoma law. Because that is now the situation presented to the Court, it must now decide that issue.

There are several reasons to think that the Oklahoma Supreme Court would come to the same conclusion as the Tenth Circuit in Wilkes. First, federal law on res judicata is very similar to Oklahoma law on the issue. Federal law also requires that for a prior judgment to bar a subsequent suit it must be final and on the merits, and the parties and claims must be the same. See MACTEC, Inc. v. Gorelick, 427 F.3d 821, 831 (10th Cir. 2005). Federal courts also follow the transactional approach in determining what constitutes the same claim for res judicata purposes. See Yapp v. Excel Corp., 186 F.3d 1222, 1227 (10th Cir. 1999). Finally, both federal and Oklahoma courts express the same purpose for res judicata — to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication by preventing inconsistent decisions. See, e.g., Allex v. McCurry, 449 U.S. 90, 95 (1980); Feightner v. Bank of Okla., N.A., 65 P.3d 624, 629 (Okla. 2003).

Second, the Tenth Circuit is hardly alone in holding that a plaintiff must bring all claims arising out of the same transaction in the same suit or be barred from bringing them later, even if the claims could not have been brought in the earlier suit because they were pending before the EEOC. See e.g., Davis. Dallas Area Rapid Transit, 383 F.3d 309, 315-16 (5th Cir. 2004); Havercombe v. Dep't of Educ. of Commonwealth of P.R., 250 F.3d 1, 8-9 (1st Cir. 2001); Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 714-15 (9th Cir. 2001); Jang v. United Tech. Corp., 206 F.3d 1147,

1149 (11th Cir. 2000); Churchill v. Star Enters., 183 F.3d 184, 193-94 (3d Cir. 1999); Rivers v. Barberton Bd. of Educ., 143 F.3d 1029, 1032033 (6th Cir. 1998); Hermann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 225-26 (7th Cir. 1993); Woods v. Dunlop Tire Corp., 972 F.2d 36, 41 (2d Cir. 1992); see also Plunkett v. State, 869 A.2d 1185, 1191-92 (R.I. 2005) (finding claim barred by res judicata that had been pending before state administrative agency during the prior lawsuit). In sum, courts are virtually unanimous in support of the rule followed in Wilkes.

Third, the holding in Wilkes is supported by the United State Supreme Court's decision in Johnson v. Railway Express Agency, 421 U.S. 454 (1975), which held that the commencement of EEOC proceedings does not toll the statute of limitations applicable to that claim. Id. at 465-67; see also Woods, 972 F.2d at 40. The Supreme Court emphasized in Johnson that a plaintiff has options to preserve a claim pending before the EEOC such as requesting a stay pending the outcome of the administrative proceedings and that a plaintiff is not entitled to special treatment if he fails to preserve his rights. 421 U.S. at 465. The Supreme Court found "no policy reason that excuses [a plaintiff's] failure to take the minimal steps necessary to preserve each claim independently." Id. at 465-66. Other courts have extended that reasoning to hold that a claim pending before the EEOC does not entitle a plaintiff to special rules on res judicata. See, e.g., Woods, 972 F.2d at 40.

Finally, holding that claims that were pending before the EEOC during the prior proceeding may be barred by res judicata furthers the purpose of the doctrine as expressed by the Oklahoma Supreme Court. This holding forces plaintiffs to bring all claims arising out of the same transaction in the same lawsuit, which saves parties the cost and vexation of multiple lawsuits and conserves judicial resources. Mr. Langkamp argues that following Wilkes would deny him the full and fair opportunity to litigate his claims. But he had the full and fair opportunity to litigate his claims; he

simply chose to bring his lawsuit at the wrong time. Just as a plaintiff whose claims are barred by the statute of limitations had the full and fair opportunity to litigate his claims if he had brought his suit earlier, so too did Mr. Langkamp have the full and fair opportunity to litigate his current retaliation claims if he had brought his suit later.

The Court finds that the Oklahoma Supreme Court would bar Mr. Langkamp's current Title VII and ADA retaliation claims due to res judicata despite the fact that he did not have a right to sue letter from the EEOC when Langkamp II was pending. Thus, the Title VII and ADA retaliation claims asserted in the second amended complaint are barred by res judicata.[10]

### D.

Mr. Langkamp alleges a negligence claim against MESTA. Dkt. # 43, at 25-26. In the plaintiffs' original complaint, Ms. Langkamp asserted a near identical claim against MESTA. Ms. Langkamp alleged that MESTA failed "to sufficiently and properly hire, train, supervise, monitor, and retain its employees in such a manner to not threaten, demean, intimidate, create fear, or otherwise impose terror on employees." Dkt. # 2, at 14. The Court granted MESTA's motion to dismiss as to Ms. Langkamp's negligence claim for two reasons: (1) the claim was barred by the OGTCA's discretionary function exemption; and (2) Ms. Langkamp asserted only mental anguish damages, and Oklahoma does not permit recovery for mental pain and anguish unless it causes physical suffering or is caused by physical suffering. Dkt. # 31, at 8-11. Here, Mr. Langkamp asserts that MESTA breached its duty to him "to provide a reasonably safe and secure environment to seek medical services and treatment for his debilitating medical condition, or otherwise an environment

---

[10]     Because the Court finds that Mr. Langkamp's retaliation claims are barred by res judicata due to Langkamp II, there is no need to address the preclusive effect of Langkamp I.

that is not to demean, intimidate, create fear, or otherwise impose terror on employees." Dkt. # 43, at 25. Mr. Langkamp insists that, unlike Ms. Langkamp's now-dismissed claim, he is not asserting a supervision claim. Dkt. # 54, at 19.

However, even if Mr. Langkamp is asserting a different claim that does not fall under the discretionary function exemption, his negligence claim fails because he has asserted only mental anguish damages. As the Court explained when dismissing Ms. Langkamp's negligence claim, Oklahoma courts do not permit recovery for mental pain and anguish unless it is caused by physical suffering or the mental anguish inflicts physical suffering. Ellington v. Coca Cola Bottling Co. of Tulsa, Inc., 717 P.2d 109, 110 (Okla. 1986) ("[T]he plaintiff may recover for mental anguish where it is caused by physical suffering and may also recover for mental anguish which inflicts physical suffering."); see also Wilson, 303 F.3d at 1213 ("In Oklahoma, damages for mental anguish are recoverable only if they are produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish."); St. Louis S.F. Ry. Co. v. Keifler, 150 P. 1026, 1028 (Okla. 1915) ("[I]t is the law of Oklahoma that no recovery can be had for mental suffering, which is not produced by, connected with, or the result of physical suffering or injury, to the person enduring the mental anguish."). Mr. Langkamp alleges damages of "significant personal injuries including fear of the future, emotional distress, and degradation/humiliation." Dkt. # 43, at 26. Mr. Langkamp's negligence claim fails because he has alleged only mental anguish damages, and MESTA's motion to dismiss will be granted as to Mr. Langkamp's negligence claim.[11]

---

[11]    Because the Court finds Mr. Langkamp has failed to state a claim for negligence under Oklahoma law, it need not address MESTA's workers' compensation argument.

**E.**

At the end of their response to both motions to dismiss, plaintiffs ask the Court, in the alternative, to stay ruling on the motions to dismiss pending amendment or until after discovery. Dkt. # 50, at 22; Dkt. # 54, at 43. Plaintiffs' request to stay pending discovery is essentially a request for the Court to convert the motions to dismiss to summary judgment motions and wait to rule on them until after discovery. Plaintiffs provide no reason that a stay should be granted, and to grant such a request would render Rule 12(b)(6) motions useless. The purpose of 12(b)(6) motions is to end litigation before significant resources have been expended when the plaintiff cannot even sufficiently allege a claim. If a plaintiff could not state a claim when there is no burden of providing evidence, he will not survive summary judgment. Staying a ruling on a 12(b)(6) motion would only delay dismissal and force the parties to expend resources conducting discovery. Thus, plaintiffs' request for a stay will be denied.

The Court interprets plaintiffs' request for stay pending amendment as a request for leave to amend their complaint. Under Rule 15(a), leave to amend should be freely given absent a reason "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178 (1962); see also Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006). The Court denies the request to amend as to plaintiffs' claims under the Oklahoma Constitution and Mr. Langkamp's claims pursuant to Title VII, the ADA, and common law negligence because amendment would be futile. The only remaining question is whether Ms. Langkamp may amend her Title VII retaliation claim against Mayes BCC.

28

The Court would be well within its power to deny amendment because plaintiffs have repeatedly failed to follow the Court's orders. The Court granted plaintiffs' prior request to amend to allow Ms. Langkamp to assert a Title VII claim against Mayes BCC. Dkt. # 31, at 17-18. However, Ms. Langkamp's first amended complaint added not only a Title VII claim, but also a claim under the Oklahoma Constitution. Dkt. # 32, at 15-16. Moreover, Ms. Langkamp reasserted her negligence claim, which the Court had already dismissed. See id. at 13. The Court then granted plaintiffs' motion to amend its decision terminating Mr. Langkamp as a party and allowed him to assert claims for which he had only recently received a right to sue letter. Dkt. # 40. Because plaintiffs had already had trouble following the Court's orders regarding amendments, the Court advised plaintiffs to "carefully comply" with the Court's orders and stated very specifically that the only amendment allowed was the addition of "Mr. Langkamp's Title VII and ADA claims covered by the March 16, 2017 right to sue letter." Id. at 5. Plaintiffs were explicitly told "not [to] alter or amend their amended complaint apart from adding the claims discussed above." Id. Yet the second amended complaint included Ms. Langkamp's claim under the Oklahoma Constitution, which she was never granted permission to assert, as well as a new claim under the Oklahoma Constitution made by Mr. Langkamp.

Plaintiffs have repeatedly apologized to the Court for their failure to comply with its orders and assert that "the amending process has been exceptionally difficult" because "the events at issue in this case are still unfolding." Dkt. # 50, at 19 n.5. Twice the plaintiffs have asked for amendment, and twice the Court has told them specifically what they could amend. These are not difficult orders to follow. However, the Court will exercise its discretion and allow one more amendment. Mr. Langkamp's claims have all been dismissed; therefore, Ms. Langkamp alone may file a third

amended complaint containing the following: (1) her § 1983 claim against MESTA, (2) her Title VII retaliation claim against MESTA, and (3) her Title VII retaliation claim against Mayes BCC, amended so as to comply with the Court's rulings herein. No other amendments will be allowed in this case, and the parties are advised that any further failure to comply with any of the Court's orders may result in sanctions.

**IT IS THEREFORE ORDERED** that Board of County Commissioners of Mayes County's motion to dismiss (Dkt. # 46) and Mayes Emergency Services Trust Authority's motion to dismiss certain claims (Dkt. # 49) are **granted**.

**IT IS FURTHER ORDERED** that Rick Langkamp is terminated as a party.

**IT IS FURTHER ORDERED** that Darla Langkamp may file a third amended complaint, consistent with the rulings herein, no later than **July 6, 2017**. She shall not reassert any previously dismissed claims.

**DATED** this 29th day of June, 2017.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE