UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| DARLA LANGKAMP, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 16-CV-0676-CVE-FHM |
| MAYES EMERGENCY SERVICES TRUST AUTHORITY, | ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Now before the Court is defendant Mayes Emergency Services Trust Authority's (MESTA) motion to partially dismiss plaintiff Darla Langkamp's third amended complaint (Dkt. # 74).

### I.

In her third amended complaint (Dkt. # 71), plaintiff alleges the following: since March 2005, MESTA has employed her as an administrative assistant. Id. at 3. During a March 8, 2016 MESTA board meeting, Trent Peper was reelected as chairman. Id. During his previous tenure, Peper frequently harassed plaintiff and other female MESTA employees, including referring to plaintiff as "sweetie," "honey" (and other "affectionate nicknames") and touching plaintiff's shoulders. Id. Plaintiff reported this behavior to MESTA supervisors and MESTA legal counsel, but Peper did not desist. Id. at 3-4. Accordingly, during the March 8, 2016 meeting, plaintiff stated to the board that she will "not be putting up with that type of pet name calling that went on the last time [Peper] was in this position." Id. at 4. She further stated that she twice spoke with MESTA legal counsel "about Peper's conduct and that nothing has happened;" and she concluded her comments

to the board by announcing to all persons present, "[y]ou are my witnesses and I will not be putting up with it again." Id.

Immediately following this meeting, MESTA counsel and two MESTA board members convened in the hallway, and one of the board members was overheard stating, "[i]f plaintiff thinks I'm mean now, wait until I get on the other side of the board," and, " [w]hat is [plaintiff] going to do? Hand out more Bibles?" Id. Tate Caudle, a MESTA supervisor, overheard this meeting and transcribed it. Id. After plaintiff "made her intention" in March 2016 to pursue relief with the Equal Employment Opportunity Commission (EEOC), Mr. Langkamp (plaintiff's husband) and Caudle were "systematically and repeatedly retaliated against by MESTA's board." Id. On June 14, 2016, MESTA terminated Mr. Langkamp's employment. Id. at 6.

After Mr. Langkamp's termination, MESTA appointed Steve Van Horn as executive director, and he,

> . . . . began to systematically strip [plaintiff] of her job duties she had for years, including, without limitation: preparing new hire packets; assisting in scheduling employee drug testing; organizing MESTA employee files; coordinating employee uniform allowances; obtaining MESTA office supplies; performing MESTA Chaplain functions; acting as MESTA liason with billing companies; and working with insurance companies and attorneys to obtain reports and information for billing.

Id. Additionally, Van Horn: in 2016, denied plaintiff a scheduled pay raise; changed plaintiff's job title from "administrative assistant" to "secretary;" questioned whether plaintiff was actually doing the work and going to the medical appointments that she said she was; and, with Alva Martin (former Mayes Board of County Commissioner), was witnessed rifling through plaintiff's desk (and afterwards, numerous items were missing and information was deleted from her computer). Id. at 7-8. Plaintiff also alleges that MESTA changed the locks of the facility and neither told her nor gave her a key; she was excluded from MESTA social events (including arranged catered luncheons and

2

a work anniversary party for Van Horn); and, in January 2017, Peper—deliberately in plaintiff's presence—engaged in inappropriate contact with another MESTA female employee (and plaintiff reported this behavior to the MESTA board). On July 11, 2017, plaintiff resigned her employment with MESTA. Id. at 8.

On September 20, 2017, plaintiff filed her third amended complaint (Dkt. # 71). It alleges free speech violation and retaliation under 42 U.S.C. § 1983 (count one), and retaliation and unlawful termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (count two). Id. at 8-12. Regarding her claim for unlawful termination, although plaintiff resigned her position with MESTA, she alleges that she was constructively discharged. Id. at 10. Plaintiff's third amended complaint seeks both compensatory and punitive damages. Id.

Defendant moves to dismiss plaintiff's claim for constructive discharge. Dkt. # 74, at 7.[1] In addition, defendant moves to dismiss plaintiff's request for punitive damages. Id. In her response brief, plaintiff has voluntarily withdrawn this request, and defendant's motion to dismiss (Dkt. # 74) is therefore **granted** as to it. Dkt. # 76, at 5.

**II.**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and

---

[1] Defendant argues that plaintiff fails to state a claim for constructive discharge and that this requires the Court to dismiss "her second cause of action." Dkt. # 74, at 7. But plaintiff's second count alleges constructive discharge and retaliation based on additional conduct (including not receiving a scheduled pay raise) that defendant does not specifically challenge. See Dkt. # 71, at 11. The Court, therefore, will construe defendant's motion as seeking to dismiss plaintiff's claim for constructive discharge within count two, as opposed to count two in toto.

3

a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 562. Although decided within an antitrust context, Twombly "expounded the pleading standard for all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at 555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991). Finally, "the 12(b)(6) standard does not require that [p]laintiff establish a prima facie case in her complaint, [but] the elements of each alleged cause of action help to determine whether [p]laintiff has set forth a plausible claim." Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012) (citations omitted).

## III.

Defendant argues that plaintiff fails to state a claim for constructive discharge because many of her allegations are "vague, general and conclusory," and her specific allegations are either too remote in time from her resignation to infer a retaliatory motive, or simply do not make plausible

4

that her working conditions at MESTA were so intolerable that a reasonable person would have felt compelled to resign. Dkt. # 74, at 17, 20, 23.[2] Plaintiff responds that she has sufficiently pled a claim for constructive discharge because she has pled facts showing that—after her complaint of sexual harassment at the March 8, 2016 board meeting and through her resignation on July 11, 2017—she was subject to systematic and continuous retaliation that compelled her to resign. Dkt. # 76, at 9.

Typically, in a Title VII constructive discharge case, the plaintiff contends that she was forced from her job because of alleged discrimination. Jeffries v. Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998). The Tenth Circuit has, however, "'found constructive discharge based on retributive acts that follow a complaint of sex discrimination.'" Rennard v. Woodworker's Supply, Inc., 101 Fed. App'x 296, 309 (10th Cir. 2004) (quoting Jeffries, 147 F.3d at 1233).[3] In order to make out a constructive discharge claim, a plaintiff must allege facts sufficient to demonstrate that her employer created "working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." Lockheed Martin Corp. v. Admin. Review Bd., 717 F.3d 1121, 1133 (10th Cir. 2013).

---

[2] Defendant also argues—mostly citing jurisprudence that treats retaliation in the context of the First Amendment—that plaintiff's allegations focus on her personal dispute and grievance, are not a matter of public concern, and, therefore, are not protected activity under Title VII. Dkt. # 74, at 18-19. This argument confuses the issues and is without merit: the protected activity for which plaintiff claims she was retaliated against is sexual harassment at her workplace, which is perhaps the quintessential example of protected activity under Title VII.

[3] This and other cited unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Plaintiff states that she complained of Peper's sexual harassment at the March 8, 2016 MESTA board meeting and, thereafter, was subject to continuos retaliation until she was compelled to resign on July 11, 2017. Plaintiff alleges that immediately after lodging her complaint at the board meeting, MESTA counsel and two board members confabbed, and one board member was overheard stating his intention to be increasingly mean to plaintiff and insulting her religiosity. In addition, plaintiff alleges that, thereafter, MESTA's executive director changed her job title from administrative assistant to secretary, inexplicably stripped her of the job duties she had performed for years, denied her a scheduled raise, questioned her as to whether she was completing the work and going to the medical appointments that she said she was, and rummaged through her desk (after which, items from her desk were missing and files from her computer were deleted). Plaintiff further alleges that MESTA changed the locks to the facility without notifying her or providing her a key, she was excluded from work social events, and Peper—deliberately in plaintiff's presence—inappropriately touched a female employee.

The Court finds that plaintiff's third amended complaint states a claim for constructive discharge. Accepting all of plaintiff's well-plead allegations as true, and taking them in the light most favorable to her, MESTA's conduct toward plaintiff after her complaint at the March 8, 2016 board meeting appears severe enough that a reasonable employee in plaintiff's position could have felt compelled to resign. In essence, plaintiff alleges that after she complained of sexual harassment, various MESTA board members and supervisors stated their resolve to be increasingly cruel to her, demeaned her personally (by insulting her religiosity), seriously undermined her professional identity (by giving her an inferior job title, stripping her of the responsibilities she performed for years with no evidence that she was performing poorly, and questioning her honesty regarding

6

whether she completed work assignments and attended medical appointments), socially ostracized her (by not inviting her to work events), egregiously invaded her personal space (by rummaging through her desk, which resulted in lost items and deleted computer files), punished her financially (by denying her a scheduled pay raise), and flaunted their ability to engage in harassing behavior without reproach (by deliberately harassing a female employee in front of her). Under these circumstances, it is certainly plausible that a reasonable person in plaintiff's position could have felt compelled to resign.[4]

Defendant also argues that plaintiff did not properly exhaust administrative remedies for "her third EEOC Charge 1363, alleging constructive discharge," since she failed to "invoke the EEOC's expertise to resolve that claim, and had no intention of doing so." Id. at 30. Defendant's sole basis for this argument is the fact that the EEOC issued plaintiff a right to sue letter for her charge alleging constructive discharge "only three days after this signed charge was submitted," which, according to defendant, "is an insufficient period of time for a proper investigation of [plaintiff's] claim . . . ." Id. at 24.[5] Plaintiff responds that the EEOC's decision to issue her a right to sue letter within three days of her filing her charge alleging constructive discharge was "something completely outside

---

[4] Defendant argues that the events plaintiff alleges are "too remote in time to state a claim for constructive discharge." Dkt. # 74, at 23. Defendant does not specify which of plaintiff's allegations are "too remote in time," but the Court presumes defendant means that plaintiff's resignation was too remote in time from these retaliatory events to lend the inference that these events caused her resignation. Defendant's argument fails, however, because plaintiff alleges that she was compelled to resign on July 11, 2017 due to the combined affect of the above-described series of continous retaliatory actions taken against her that began on March 8, 2016.

[5] Defendant also argues that the "same may be said as to plaintiff's Second EEOC Charge, alleging she was denied a raise in retaliation for filing her First Charge 897." Id. Defendant, however, does not develop this argument and the Court does not consider it.

7

of [her] control" and does not establish that she failed to cooperate with the investigation or in any other way failed to exhaust her administrative remedies with respect to this charge. Dkt. # 76, at 13.

Under Title VII, the exhaustion of administrative remedies is a prerequisite to suit. Aspley v. Boeing Co. 691 F.3d 1184, 1210 (10th Cir. 2012). "Good faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires." Khader v. Aspin, 1 F.3d 968, 971 (10th Cir. 1993) (quotation omitted). "Conversely, when a complainant refuses or fails to provide the agency information sufficient to evaluate the merits of the claim, he or she cannot be deemed to have exhausted administrative remedies." Id. (quotation omitted).

The Court finds that plaintiff exhausted administrative remedies with respect to her claim for constructive discharge. Defendant's sole basis for its argument that plaintiff failed to exhaust administrative remedies is that the EEOC issued plaintiff a right to sue later three days after plaintiff filed her charge alleging constructive discharge. Defendant does not allege that plaintiff in any way failed to cooperate with the EEOC, or that plaintiff failed to exhaust administrative remedies for any other reason. Defendant's argument, therefore, must fail; plaintiff has no control over the EEOC's internal processes, and the simple fact that the agency issued her a right to sue letter within three days of her filing her charge in no way indicates that plaintiff failed to cooperate with the agency's investigation.

Accordingly, because plaintiff's third amended complaint states a claim for constructive discharge, and plaintiff exhausted her administrative remedies with respect to this claim, defendant's motion to dismiss (Dkt. # 74) is **denied** with respect to plaintiff's claim for constructive discharge.

**IT IS THEREFORE ORDERED** that defendant's motion to partially dismiss plaintiff's third amended complaint (Dkt. # 74) is **granted** as to plaintiff's request for punitive damages and **denied** as to plaintiff's claim for constructive discharge.

**IT IS FURTHER ORDERED** that defendant's answer to the third amended complaint (Dkt. # 71) is due no later than **February 16, 2018**.

**DATED** this 2nd day of February, 2018.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE